# EXHIBIT C

| Community | Community map repository address |
|---|---|
| City of Buchanan | Buchanan City Hall, 302 North Redbud Trail, Buchanan, MI 49107. |
| City of Coloma | Coloma City Hall, 119 North Paw Paw Street, Coloma, MI 49038. |
| City of Niles | Niles City Hall, 333 North Second Street, Suite 301, Niles, MI 49120. |
| City of St. Joseph | St. Joseph City Hall, 700 Broad Street, St. Joseph, MI 49085. |
| City of Watervliet | Watervliet City Hall, 158 West Pleasant Street, Watervliet, MI 49098. |
| Township of Berrien | Berrien Township Office, 8916 M–140, Berrien Center, MI 49102. |
| Township of Bertrand | Bertrand Community Hall, 3835 Buffalo Road, Buchanan, MI 49107. |
| Township of Buchanan | Buchanan Township Hall, 15235 Main Street, Buchanan, MI 49107. |
| Township of Hagar | Hagar Township Hall, 3900 Riverside Road, Riverside, MI 49084. |
| Township of Royalton | Royalton Township Hall, 980 Miners Road, St. Joseph, MI 49085. |
| Township of Sodus | Sodus Township Office, 4056 King Drive, Sodus, MI 49126. |
| Village of Shoreham | Village of Shoreham Village Hall, 2120 Brown School Road, St. Joseph, MI 49085. |
| **Cass County, Michigan (All Jurisdictions)** <br> **Project: 23–05–0013S    Preliminary Date: March 27, 2024** | |
| City of Dowagiac | City Hall, 241 South Front Street, Dowagiac, MI 49047. |
| Township of Calvin | Calvin Township Hall, 18693 Mount Zion Street, Cassopolis, MI 49031. |
| Township of Jefferson | Jefferson Township Hall, 24725 Jefferson Center Street, Cassopolis, MI 49031. |
| Township of Lagrange | Lagrange Township Hall, 58253 M–62, Cassopolis, MI 49031. |
| Township of Marcellus | Township Hall, 463 W Main Street, Marcellus, MI 49067. |
| Township of Mason | Mason Township Hall, 17049 US Highway 12, Edwardsburg, MI 49112. |
| Township of Newberg | Newberg Township Hall, 13020 Born Street, Jones, MI 49061. |
| Township of Ontwa | Ontwa Township Hall, 26225 US Highway 12, Edwardsburg, MI 49112. |
| Township of Penn | Penn Township Hall, 60717 South Main Street, Vandalia, MI 49095. |
| Township of Pokagon | Pokagon Township Hall, 30683 Peavine Street, Dowagiac, MI 49047. |
| Township of Porter | Porter Township Hall, 69373 Baldwin Prairie Road, Union, MI 49130. |
| Township of Silver Creek | Silver Creek Township Hall, 32764 Dixon Street, Dowagiac, MI 49047. |
| Township of Volinia | Volinia City Hall, 53254 Goodenough Road, Marcellus, MI 49067. |
| Township of Wayne | Wayne Township Hall, 53950 Glenwood Road, Dowagiac, MI 49047. |
| Village of Cassopolis | Village Hall, 121 North Disbrow Street, Cassopolis, MI 49031. |
| Village of Edwardsburg | Village Hall, 26296 US Highway 12, Edwardsburg, MI 49112. |
| Village of Vandalia | Village Hall, 18035 State Street, Vandalia, MI 49095. |

[FR Doc. 2025–02982 Filed 2–21–25; 8:45 am]
**BILLING CODE 9110–12–P**

---

# DEPARTMENT OF HOMELAND SECURITY

## U.S. Citizenship and Immigration Services

[CIS No. 2809–25; DHS Docket No. USCIS–2014–0001]

RIN 1615–ZB70

### Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti

**AGENCY:** U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS).

**ACTION:** Notice of Temporary Protected Status (TPS) partial vacatur.

**SUMMARY:** Through this notice, the Department of Homeland Security (DHS) announces that the Secretary of Homeland Security (Secretary) has decided to partially vacate the June 4, 2024, decision of former Secretary Alejandro Mayorkas regarding the extension of the designation of Haiti for Temporary Protected Status (TPS) and the new designation of Haiti for TPS. In the 2024 action, former Secretary Mayorkas again extended the designation of Haiti for TPS for the statutory maximum of 18 months (until February 3, 2026), which covered approximately 199,445 Haitian nationals; and again newly designated Haiti for TPS, which had the effect of allowing approximately 321,349 additional Haitian nationals to qualify for the same 18-month period. For the reasons described in this notice, the Secretary has determined to partially vacate the June 4, 2024, decision by reducing the designation period from 18 months to 12 months. The Secretary is also making a corresponding change to the registration deadline for new applicants under the new designation. Accordingly, by operation of this notice, the Haiti TPS extension and new designation will expire on August 3, 2025, instead of February 3, 2026, and the first-time registration will remain in effect until August 3, 2025, instead of February 3, 2026.

**DATES:** The partial vacatur of the June 4, 2024, decision is effective immediately. Notice of the June 4, 2024, decision was published at 89 FR 54484 (July 1, 2024).

**FOR FURTHER INFORMATION CONTACT:** Samantha Deshommes, Chief, Regulatory Coordination Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, 800–375–5283.

**SUPPLEMENTARY INFORMATION:**

### I. Temporary Protected Status (TPS) Generally

The Immigration and Nationality Act (INA) authorizes the Secretary, after consultation with appropriate U.S. Government agencies, to designate a foreign state (or part thereof) for TPS if the Secretary determines that certain country conditions exist.[1] In the case of Haiti, the designation was based on former Secretary Mayorkas' determination that ''there exist extraordinary and temporary conditions in [Haiti] that prevent aliens who are nationals of [Haiti] from returning to [Haiti] in safety.'' Former Secretary Mayorkas, however, failed to evaluate whether ''permitting the aliens to remain temporarily in the United

---

[1] INA 244(b)(1), 8 U.S.C. 1254a(b)(1). Although section 244(b)(1) of the INA continues to refer to the Attorney General, this authority now resides with the Secretary of Homeland Security by operation of the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135, as amended. *See, e.g.,* 6 U.S.C. 557; 8 U.S.C. 1103(a)(1).

States'' is not ''contrary to the national interest of the United States.''[2]

The determination whether to designate any foreign state (or part thereof) for TPS is discretionary, and with respect to an exercise of this discretion, Congress expressly withheld jurisdiction from Federal courts such that there is no judicial review of ''any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state'' for TPS.[3] If a country is designated, the Secretary, in the Secretary's discretion, may then grant TPS to eligible nationals of that foreign state (or individual aliens having no nationality who last habitually resided in the designated foreign state). *See* INA 244(a)(1)(A), 8 U.S.C. 1254a(a)(1)(A). The INA provides that such aliens shall be granted employment authorization, and that such work authorization must be effective throughout the TPS designation period.[4]

At least 60 days before the expiration of a foreign state's TPS designation or extension, the Secretary, after consultation with appropriate U.S. Government agencies, must review the conditions in the foreign state designated for TPS to determine whether they continue to meet the conditions for the TPS designation. *See* INA 244(b)(3)(A), 8 U.S.C. 1254a(b)(3)(A). If the Secretary determines conditions in the foreign state continue to meet the conditions for TPS designation, the designation will be extended for 6 months or, in the Secretary's discretion, 12 or 18 months. *See* INA 244(b)(3)(A), (C), 8 U.S.C. 1254a(b)(3)(A), (C). If the Secretary determines that the foreign state no longer meets the conditions for TPS designation, the Secretary must terminate the designation. *See* INA 244(b)(3)(B), 8 U.S.C. 1254a(b)(3)(B).

## II. Background

Designations of Haiti for TPS based on ''extraordinary and temporary conditions'' in that country extend back *15 years.* Haiti was initially designated in January 2010 on the basis of extraordinary and temporary conditions stemming from an earthquake.[5] DHS estimated at the time that there were 100,000 to 200,000 Haitians in the United States who would be eligible.[6] Following the initial designation, DHS extended the TPS designation for Haiti and newly designated Haiti based on ''extraordinary and temporary conditions'' numerous times between 2011 and 2018.[7]

In January 2018, DHS announced the termination of the TPS designation of Haiti effective July 22, 2019.[8] The termination of Haiti's TPS designation was challenged in several lawsuits, and preliminary injunctions prevented DHS from implementing the termination of TPS for Haiti pending a final court order.[9]

Meanwhile, in August 2021, former Secretary Mayorkas announced that he was newly designating Haiti for 18 months on the basis of ''extraordinary and temporary conditions.''[10] Another 18-month extension and new designation was published in February 2023.[11] DHS then extended the re-registration period from 60 days to 18 months.[12]

Most recently, in July 2024, DHS issued a notice stating that Secretary Mayorkas once again had determined to extend and newly designate Haiti for TPS for an 18-month period, set to expire on February 3, 2026.[13] DHS concluded, in summary, that ''Haiti is experiencing extraordinary and temporary conditions resulting from grave insecurity and gang crime, as well as socio-economic and humanitarian conditions, including those resulting from environmental disasters aggravating food insecurity.''[14] However, DHS concluded, without any support in the record, that allowing Haitian nationals who would qualify for TPS to remain in the country was not contrary to the national interest, as required by the statute.

Each new designation allowed additional Haitian nationals who entered the United States, including illegally, to qualify even though these populations were not impacted by the preceding findings of ''extraordinary and temporary conditions.'' In May 2011, DHS estimated that 57,000 Haitians were eligible to register for TPS.[15] In August 2021, DHS estimated that 155,000 Haitians were eligible under that new designation.[16] And by July 2024, the estimate had ballooned to 520,694 (199,445 under the extension, and 321,249 additional aliens under the new designation).[17]

Further, former Secretary Mayorkas in 2023 reconsidered and rescinded the first Trump Administration's decisions to terminate TPS designations for Honduras, El Salvador, Nicaragua, and Nepal.[18] In the case of El Salvador,

---

[2] INA 244(b)(1)(C), 8 U.S.C. 1254a(b)(1)(C); *see Extension and Redesignation of Haiti for Temporary Protected Status,* 89 FR 54484 (July 1, 2024). The Secretary also may designate a country (or part of a country) for TPS on the basis of (1) an ongoing armed conflict such that returning would pose a serious threat to the personal safety of the country's nationals, or (2) an environmental disaster (including an epidemic) that results in a substantial, but temporary, disruption of living conditions in the affected area and certain other conditions are met. *See* INA 244(b)(1)(A)–(B), 8 U.S.C. 1254a(b)(1)(A)–(B).

[3] INA 244(b)(5)(A), 8 U.S.C. 1254a(b)(5)(A).

[4] *See* INA 244(a)(1)(B), (a)(2), 8 U.S.C. 1254a(a)(1)(B), (a)(2).

[5] *See Designation of Haiti for Temporary Protected Status,* 75 FR 3476 (Jan. 21, 2010).

[6] 75 FR 3477.

[7] *See Extension and Redesignation of Haiti for Temporary Protected Status,* 76 FR 29000 (May 19, 2011); *Extension of the Designation of Haiti for Temporary Protected Status,* 77 FR 59943 (Oct. 1, 2012); *Extension of the Designation of Haiti for Temporary Protected Status,* 79 FR 11808 (Mar. 3, 2014); *Extension of the Designation of Haiti for Temporary Protected Status,* 80 FR 51582 (Aug. 25, 2015); *Extension of the Designation of Haiti for Temporary Protected Status,* 82 FR 23830 (May 24, 2017).

[8] *See Termination of the Designation of Haiti for Temporary Protected Status,* 83 FR 2648 (Jan. 18, 2018).

[9] *See, e.g.,* Order Granting Motion for Preliminary Injunction dated Oct. 3, 2018, ECF 128, in *Ramos* v. *Nielsen,* No. 18–cv–01554 (N.D. Cal.); Decision and Order dated Apr. 11, 2019, ECF 155 in *Saget* v. *Trump,* No. 1:18–cv–1599 (E.D.N.Y.). Both preliminary injunctions were appealed, *see Ramos* v. *Nielsen,* No. 18–16981 (9th Cir.) and *Saget* v. *Trump,* No. 19–1685 (2d Cir,), but the appellate proceedings were dismissed after Haiti was newly designated for TPS. *See* Order dated June 29, 2023, ECF 191, *Ramos* v. *Nielsen,* No. 18–16981 (9th Cir,); Order on parties' stipulated dismissal of appeal, dated Oct. 5, 2021, ECF 281, *Saget* v. *Trump,* No. 19–1685 (2d Cir.). On Dec. 28, 2023, the U.S. District Court for the Northern District of California dismissed *Ramos* v. *Nielsen,* No. 18–cv–01554 (N.D. Cal. Dec. 28, 2023), holding that the subsequent TPS designations rendered the litigation moot. *See* Order Granting Defendants' Motion to Dismiss dated Dec. 28, 2023, ECF 222, *Ramos* v. *Nielsen,* No. 18–cv–01554, (N.D. Cal.). On October 15, 2021, the U.S. District Court for the Eastern District of New York similarly dismissed the *Saget* case. *See* Stipulation of Dismissal and Order Dismissing Case dated Oct. 15, 2021, ECF 166, *Saget* v. *Trump,* No. 1:18–cv–1599 (E.D.N.Y.). The termination of TPS for Haiti was also challenged in *Centro Presente, et al.,* v. *Biden,* No. 1:18–cv–1–340 (D. Mass.) and *Nat'l Ass'n for the Advancement of Colored People* v. *Dep't of Homeland Security,* No.1:18–cv–239 (D. Md.). Claims in those cases were also dismissed following the new designation of TPS for Haiti. *See* Stipulation of Dismissal dated June 29, 20203, ECF 178, *Centro Presente, et al.* v. *Biden,* No. 1:18–cv–1–340 (D. Mass.); Order Approving Stipulation of Dismissal dated Nov. 4, 2021, ECF 116, *NAACP* v. *DHS,* No.1:18–cv–239 (D. Md.).

[10] *See Designation of Haiti for Temporary Protected Status,* 86 FR 41863 (Aug. 3, 2021).

[11] *See Extension and Redesignation of Haiti for Temporary Protected Status,* 88 FR 5022 (Jan. 26, 2023).

[12] *See Extension of Re-Registration Periods for Extensions of the Temporary Protected Status Designations of El Salvador, Haiti, Honduras, Nepal, Nicaragua, and Sudan,* 88 FR 86665 (Dec. 14, 2023).

[13] *See Extension and Redesignation of Haiti for Temporary Protected Status,* 89 FR 54484 (July 1, 2024).

[14] 89 FR 54491.

[15] 76 FR 29002.

[16] 86 FR 41868.

[17] 89 FR 54492.

[18] *See Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary Protected Status; Extension of the Temporary Protected Status Designation for El Salvador,* 88 FR 40282 (June 21, 2023);

Secretary Mayorkas determined—five years after the 2018 termination decision was announced—that "at the time of the decision to terminate TPS, El Salvador continued to experience" certain conditions "that were either insufficiently considered or not considered in the termination decision" and therefore that "[t]he termination decision failed to adequately assess conditions in El Salvador in 2018."[19] That notice stated that "[a]n agency has inherent (that is, statutorily implicit) authority to revisit its prior decisions unless Congress has expressly limited that authority" and that "[t]he TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination."[20] DHS did not similarly reconsider and rescind the 2018 decision to terminate the Haiti TPS designation because, as noted, Secretary Mayorkas instead decided to newly designate Haiti.[21]

### III. Reconsideration and Partial Vacatur of the 2024 Decision

President Trump underscored in Executive Order 14159, *Protecting the American People Against Invasion,* that enforcing the immigration laws "is critically important to the national security and public safety of the United States."[22] In furtherance of that objective, the President directed the Secretary, along with the Attorney General and Secretary of State, to promptly take all appropriate action, consistent with law, to rescind policies that led to increased or continued presence of illegal aliens in the United States.[23] Among the directed actions are to ensure that the TPS designations are consistent with the TPS statute and "are appropriately limited in scope and made for only so long as may be necessary to fulfill the textual requirements of that statute."[24]

---

*Reconsideration and Rescission of Termination of the Designation of Honduras for Temporary Protected Status; Extension of the Temporary Protected Status Designation for Honduras,* 88 FR 40304 (June 21, 2023); *Reconsideration and Rescission of Termination of the Designation of Nicaragua for Temporary Protected Status; Extension of the Temporary Protected Status Designation for Nicaragua,* 88 FR 40294 (June 21, 2023); *Reconsideration and Rescission of Termination of the Designation of Nepal for Temporary Protected Status; Extension of the Temporary Protected Status Designation for Nepal,* 88 FR 40317 (June 21, 2023).

[19] 88 FR 40287.
[20] 88 FR 40285.
[21] *See Designation of Haiti for Temporary Protected Status,* 86 FR 41863 (Aug. 3, 2021).
[22] 90 FR 8443, 8443 (Jan. 20, 2025).
[23] 90 FR 8446.
[24] *Id.*

The Secretary of Homeland Security accordingly is reconsidering and partially vacating the June 4, 2024, decision of Secretary Mayorkas to extend the Haiti TPS designation and newly designate Haiti for TPS for an additional 18 months (from Aug. 4, 2024, to Feb. 3, 2026). Specifically, the Secretary has determined that the extension and designation period for Haiti should be reduced from the statutory maximum of 18 months to 12 months. Accordingly, by operation of this notice, the Haiti TPS extension and new designation will expire on August 3, 2025, instead of February 3, 2026.

The Secretary is taking this action for several reasons. First, there is no discussion in the July 1, 2024, **Federal Register** notice of why the 18-month period was selected in lieu of a 6- or 12-month period. Nor does the administrative record underlying the June 3, 2024, decision and July 1, 2024, notice bear any discussion of why the 18-month period was chosen. Allowing aliens from a given country, including aliens who entered the United States illegally or overstayed their authorized period of admission, to remain in the United States temporarily with employment authorization is an extraordinary act. Congress recognized the gravity of such action under the TPS statute by setting the default extension period at 6 months,[25] underscoring the uniqueness of this authority,[26] and limiting its own authority to enact legislation allowing TPS recipients to adjust to lawful permanent resident status.[27] Accordingly, determinations of how long a new designation should remain in effect and whether to depart from the default six-month period for an extension of an existing designation should take into account important considerations relating to the purpose of the statute and specific country and country conditions at issue and should not rest alone on administrative convenience. Here, there was no explanation whatsoever of why the 18-month period was selected.

Second, and similarly, the July 1, 2024, notice is bereft of any justification of why permitting the ever-increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain

---

[25] *See* INA 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C).
[26] *See* INA 244(g), 8 U.S.C. 1254a(g) ("Except as otherwise specifically provided, this section shall constitute the exclusive authority of the [Secretary of Homeland Security] under law to permit aliens who are or may become otherwise deportable or have been paroled into the United States to remain in the United States temporarily because of their particular nationality or region of foreign state of nationality.").
[27] *See* INA 244(h), 8 U.S.C. 1254a(h).

temporarily in the United States is not contrary to the U.S. national interest. The notice simply states that "it is not contrary to the national interest of the United States." The administrative record underlying Secretary Mayorkas' June 4, 2024, decision likewise lacks any discussion of the critical national interest criterion. Such conclusory determinations do not accord with the gravity of TPS decisions under the INA. "National interest" is an expansive standard that may encompass an array of broad considerations, including foreign policy, public safety (*e.g.,* potential nexus to criminal gang membership), national security, migration factors (*e.g.,* pull factors), immigration policy (*e.g.,* enforcement prerogatives), and economic considerations (*e.g.,* adverse effects on U.S. workers, impact on U.S. communities).[28] Determining whether permitting a class of aliens to remain temporarily in the United States is contrary to the U.S. national interest therefore calls upon the Secretary's expertise and discretionary judgment, informed by her consultations with appropriate U.S. Government agencies.

Third, although the July 1, 2024, notice cites some country conditions reports that are relatively proximate to the June 4, 2024, decision, several others date back to early 2023, 2022, or even earlier.[29] And certain sources upon which DHS relied indicated that significant developments were taking place in 2024 that might result in an improvement in conditions. For example, as stated in the July 1, 2024, **Federal Register** notice, the United Nations had recently authorized a Multinational Security Support (MSS) mission to deploy in Haiti in 2024 and support the Haitian National Police in capacity building, combatting gang violence, and provide security for

---

[28] *See, e.g., Poursina* v. *USCIS,* 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic an national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Trump* v. *Hawaii,* 585 U.S. 667, 684–86 (2018)); *Flores* v. *Garland,* 72 F.4th 85, 89–90 (5th Cir. 2023) (same); *Brasil* v. *Sec'y, Dep't of Homeland Sec.,* 28 F.4th 1189, 1193 (11th Cir. 2022) (same); *cf. Matter of D–J–,* 23 I&N Dec. 572, 579–81 (A.G. 2003) (recognizing that taking measures to stem and eliminate possible incentives for potential large-scale migration from a given country—in that case, Haiti—is "sound immigration policy" and an "important national security interest"); *Matter of Dhanasar,* 26 I&N Dec. 884, 890–91 (AAO 2016) (taking into account impact on U.S. workers in "national interest" assessments).

[29] *See, e.g.,* 89 FR 54888, 54490 (relying on Apr. 2021 report by Harvard Law School, July 2022 report by the International Crisis Group, and Sept. 2021 report by the Council on Foreign Relations).

critical infrastructure.[30] The Department of State likewise underscored that significant development. Thus, both DHS and the Department of State contemplated the real possibility of an improvement in conditions with the deployment of the United Nations MSS mission, yet that important development was not expressly factored into the determination of the length of the extension and designation period.

Eighteen months is the maximum period of designation or extension authorized under the TPS statute. Neither the 2021 new designation, the 2023 extension and new designation, nor the 2024 extension and new designation contained any discussion of national interest considerations or why the 18-month (vs. 6 or 12-month) periods were granted. Given the protracted duration of the ''extraordinary and temporary conditions''-based designation for Haiti, the absence of any meaningful appraisal of national interest factors or justification for the 18-month extension, and the fact that eligible Haitians were able to register for TPS under the July 1, 2024, notice for over seven months, the Secretary has determined that a 12-month period is warranted. Abbreviating the period from 18 to 12 months will allow for a fresh review of country conditions in Haiti and of whether such conditions remain both ''extraordinary'' and ''temporary,'' whether Haitian may return in safety, and whether it is contrary to the U.S. national interest to continue to permit the Haitian nationals to remain temporarily in the United States.

Although the statute allows the Secretary to reassess country conditions—including whether allowing the aliens to remain temporarily in the United States is contrary to the U.S. national interest—at any time at least 60 days before the end of the extension or designation period, the statute does not preclude this more modest action in the interim.[31] The Secretary intends to conduct a review of current conditions in Haiti and make a new determination in due course.

As the prior Administration concluded, the TPS statute does not limit the Secretary's inherent authority under the INA to reconsider any TPS-related determination, and upon reconsideration, to vacate or amend the determination.[32] The Secretary is taking the modest action here of partially vacating the June 4, 2024, decision to reduce the designation and extension period from 18 months to 12 months and to make a corresponding change to the initial registration period for new applicants under the 2024 new designation.

In taking this action, the Secretary has considered putative reliance interests in Secretary Mayorkas' unreasoned granting of the statutory maximum 18-month period.[33] In particular, as noted, in determining that a 12-month period (vs. 6 months) is warranted, the Secretary considered that Haitians have already been able to register under the July 1, 2024, notice for over seven months. The Secretary also considered potential reliance interests in deciding only to partially vacate the 2024 decision instead of—as Secretary Mayorkas did in 2023—entirely rescinding or vacating the prior Administration's decision. This action does not alter the 60-day re-registration period permitted for existing beneficiaries under the 2024 extension, which expired on August 30, 2024. And eligible new applicants will still be able to register under the 2024 new designation, but they must now do so by August 3, 2025, instead of February 3, 2026. Moreover, any putative reliance interests arguably engendered by the 18-month, vs. 12-month, designation and extension period are outweighed by the overriding interests and concerns articulated in this notice.

*B. Effect of the Vacatur*

As a result of the partial vacatur, the 2024 Haiti TPS extension and new designation remains in effect until August 3, 2025, and the initial registration period for new applicants under the 2024 Haiti TPS designation will remain in effect until August 3, 2025. The Secretary, consistent with the statute, intends to review the Haiti TPS designation by June 4, 2025. If she fails to do so, the statute triggers an automatic six-month extension of the current TPS designation.

Pursuant to this partial vacatur, TPS re-registration applications, initial applications, and associated applications for employment authorization filed pursuant to the July 1, 2024, notice that remain pending with USCIS will, if approved, receive an expiration date of August 3, 2025. TPS beneficiaries under the Haiti TPS designation who have already received Employment Authorization Documents (EADs); Forms I–797, Notice of Action (Approval Notice); and Forms I–94, Arrival/Departure Record (collectively known as TPS-related documentation) with a February 3, 2026, expiration date do not need to refile applications with USCIS for new TPS-related documentation showing an August 3, 2025, expiration date. USCIS will not recall TPS-related documentation previously issued with February 3, 2026, expiration dates and those documents remain valid through the new TPS Haiti designation period expiring on August 3, 2025. Additionally, USCIS will not issue new TPS-related documentation with the August 3, 2025, expiration date to aliens who have previously received documentation with the February 3, 2026, expiration date.

Employers and Federal, State, and local government agencies (such as Departments of Motor Vehicles) that previously accepted or are presented with an EAD with the TPS category code of A–12 or C–19 that expires on February 3, 2026, must update their records to note that the validity date of the document is through August 3, 2025.

Aliens who have filed TPS applications pursuant to the July 1, 2024, notice that remain pending with USCIS may also choose to withdraw their TPS applications and request a refund of any filing fees by submitting

---

[30] 89 FR 54490 & nn. 77–79 (citing United Nations Security Council, Resolution 2699 (Oct. 2, 2023)).

[31] *See* INA 244(b)(3)(A)–(B), 1254a(b)(3)(A)–(B) (providing that the Secretary shall review conditions at least 60 days before the end of the initial period of designation and any extended period of designation).

[32] *See* INA 103(a), 244(b)(3), (b)(5)(A); 8 U.S.C. 1103(a), 1254a(b)(3), (b)(5)(A); *Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary Protected Status; Extension of the Temporary Protected Status Designation for El Salvador,* 88 FR 40282, 40285 (June 21, 2023) (''An agency has inherent (that is, statutorily implicit) authority to revisit its prior decisions unless Congress has expressly limited that authority. The TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination.''); *see also, e.g., Ivy Sports Medicine, LLC* v. *Burwell,* 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) (''[A]dministrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion. . . . ''[I]nherent authority for timely administrative reconsideration is premised on the notion that the power to reconsider is inherent in the power to decide.'' (quotation marks and citations omitted); *Macktal* v. *Chao,* 286 F.3d 822, 825–26 (5th Cir. 2002) (''It is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions.'') (collecting cases); *Mazaleski* v. *Treusdell,* 562 F.2d 701, 720 (D.C. Cir. 1977) (''We have many times held that an agency has the inherent power to reconsider and change a decision if it does so within a reasonable period of time.''); *cf. Last Best Beef, LLC* v. *Dudas,* 506 F.3d 333, 340 (4th Cir. 2007) (agencies possess especially ''broad authority to correct their prior errors'').

[33] Because temporary protected status, as the name itself makes clear, is an inherently temporary status and TPS designations are time-limited and subject to agency review, any putative reliance interests of registrants in the Haiti under the Haiti designation merit only diminished weight.

a signed written withdrawal request to USCIS.

## IV. Notice of Partial Vacatur of Secretary Mayorkas' 2024 Decision Regarding the Haiti TPS Extension and New Designation

By the authority vested in me as Secretary under sections 103(a) and 244 of the Immigration and Nationality Act, 8 U.S.C. 1103(a), 1254a, I am vacating in part the decision announced in the July 1, 2024, notice titled *Extension and Redesignation of Haiti for Temporary Protected Status,* 89 FR 54484. In doing so, I am (1) amending the period of the extension and designation of Haiti for TPS from 18 months to 12 months, with a new end date of August 3, 2025; and (2) making a corresponding change to the initial registration period for new applicants under the new designation, which now will remain in effect through August 3, 2025. This notice supersedes the July 1, 2024, notice at 89 FR 54484 to the extent modified by this partial vacatur.

Information concerning the TPS designation for Haiti will be available at local USCIS offices upon publication of this notice and through the USCIS National Customer Service Center at 1–800–375–5283. This information will be published on the USCIS website at *www.USCIS.gov.*

**Kristi Noem,**
*Secretary, U.S. Department of Homeland Security.*
[FR Doc. 2025–02970 Filed 2–20–25; 4:15 pm]
**BILLING CODE 9111–97–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 731–TA–1662–1663 (Final)]**

### Glass Wine Bottles From China and Mexico

#### Determinations

On the basis of the record[1] developed in the subject investigations, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that an industry in the United States is not materially injured or threatened with material injury by reason of imports of glass wine bottles from China and Mexico, provided for in subheading 7010.90.50 of the Harmonized Tariff Schedule of the United States, that have been found by the U.S. Department of Commerce ("Commerce") to be sold in the United States at less than fair value ("LTFV").[2]

#### Background

The Commission instituted these investigations effective December 29, 2023, following receipt of petitions filed with the Commission and Commerce by the U.S. Glass Producers Coalition, which is comprised of Ardagh Glass Inc. (Indianapolis, Indiana) and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (Pittsburgh, Pennsylvania). The Commission scheduled the final phase of the investigations following notification of a preliminary determination by Commerce that imports of glass wine bottles from China were being subsidized by the government of China (89 FR 47533, June 3, 2024). Notice of the scheduling of the final phase of the Commission's investigations and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** (89 FR 49901, June 12, 2024, and as revised in 89 FR 63445, August 5, 2024). The Commission conducted its hearing on August 14, 2024. All persons who requested the opportunity were permitted to participate.

Although antidumping duty petitions for Chile, China, and Mexico and a countervailing duty petition for China were filed on the same day, December 29, 2023, the investigation schedules became staggered when Commerce did not align its countervailing duty investigation concerning China with its antidumping duty investigations concerning Chile, China, and Mexico and reached an earlier final countervailing duty determination. On October 9, 2024, the Commission issued a final negative determination in its countervailing duty investigation of glass wine bottles from China (89 FR 83515, October 16, 2024).

On December 10, 2024, counsel for the petitioner filed with Commerce a request to withdraw its petition regarding imports of glass wine bottles from Chile. On December 30, 2024, Commerce published notice in the **Federal Register** of the termination of its subject investigation concerning glass wine bottles from Chile (89 FR 106425) and the Commission subsequently terminated its antidumping duty investigation concerning glass wine bottles from Chile (90 FR 1543, January 8, 2025).

Following notification of final determinations by Commerce that imports of glass wine bottles from China and Mexico were being sold at LTFV within the meaning of section 735(a) of the Act (19 U.S.C. 1673d(a)), notice of the supplemental scheduling of the final phase of the Commission's antidumping duty investigations concerning China and Mexico was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** (90 FR 3251, January 14, 2025).

The Commission made these determinations pursuant to § 735(b) of the Act (19 U.S.C. 1673d(b)). It completed and filed its determinations in these investigations on February 18, 2025. The views of the Commission are contained in USITC Publication 5588 (February 2025), entitled *Glass Wine Bottles from China and Mexico: Investigation Nos. 731–TA–1662–1663 (Final).*

By order of the Commission.
Issued: February 18, 2025.

**Lisa Barton,**
*Secretary to the Commission.*
[FR Doc. 2025–02959 Filed 2–21–25; 8:45 am]
**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

### Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has received a complaint entitled *Certain Foreign-Fabricated Semiconductor Devices, Products Containing the Same, and Components Thereof, DN3809;* the Commission is soliciting comments on any public interest issues raised by the complaint or complainant's filing pursuant to the Commission's Rules of Practice and Procedure.

**FOR FURTHER INFORMATION CONTACT:** Lisa R. Barton, Secretary to the Commission, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436, telephone (202) 205–2000. The public version of the complaint can be accessed on the Commission's Electronic Document Information System (EDIS) at *https://edis.usitc.gov.*

---

[1] The record is defined in § 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] 90 FR 76 and 79 (January 2, 2025).