# EXHIBIT 28

 

DATE DOWNLOADED: Fri Feb 28 09:35:15 2025
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
Igor I. Kavass; Bernard D. Jr. Reams; Inc. William S. Hein Co. Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649 (1989).

ALWD 7th ed.
Kavass, Igor I.; Reams, Bernard D. Jr.; William S. Hein Co., Inc. Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649 (1989).

APA 7th ed.
Kavass, I. (1989). Immigration Act of 1990: Legislative History of Pub. L. No.
101-649. .

Chicago 17th ed.
Kavass Igor I.; Reams, Bernard D. Jr.; William S. Hein Co., Inc. Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649. , .

McGill Guide 9th ed.
Igor I. Kavass; Bernard D. Jr. Reams; Inc. William S. Hein Co., Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649 (: ., 1989)

AGLC 4th ed.
Igor I. Kavass; Bernard D. Jr. Reams; Inc. William S. Hein Co., Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649 (., 1989

MLA 9th ed.
Kavass, Igor I., et al. Immigration Act of 1990: A Legislative History of Pub. L. No.
101-649. , . HeinOnline.

OSCOLA 4th ed.
Kavass, Igor I.; Reams, Bernard D. Jr.; William S. Hein Co., Inc. Immigration Act of
1990: A Legislative History of Pub. L. No. 101-649. , .          Please note:
citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

| 101st Congress | | |
|---|---|---|
| *1st Session* | HOUSE OF REPRESENTATIVES | Report 101–245 |

# CHINESE TEMPORARY PROTECTED STATUS ACT OF 1989

---

September 19, 1989.—Ordered to be printed

---

Mr. Brooks, from the Committee on the Judiciary,
submitted the following

# REPORT

[To accompany H.R. 2929]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 2929) to amend the Immigration and Nationality Act to provide for temporary protected status for Chinese nationals and for nationals of other foreign states which are designated by the Attorney General, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Chinese Temporary Protected Status Act of 1989".

**SEC. 2. TEMPORARY PROTECTED STATUS FOR NATIONALS OF CHINA AND OTHER DESIGNATED FOREIGN STATES.**

(a) In General.—The Immigration and Nationality Act is amended by inserting after section 244 the following new section:

"TEMPORARY PROTECTED STATUS

"SEC. 244A. (a) Granting of Status.—

"(1) In general.—In the case of an alien who is a national of a foreign state designated under subsection (b) and who meets the requirements of subsection (c), the Attorney General, in accordance with this section—

"(A) shall grant the alien temporary protected status in the United States and shall not deport the alien from the United States during the period in which such status is in effect, and

"(B) shall authorize the alien to engage in employment in the United States and provide the alien with an 'employment authorized' endorsement or other appropriate work permit.

2

"(2) DURATION OF WORK AUTHORIZATION.—Work authorization provided under this section shall be effective throughout the period the alien is in temporary protected status under this section.

"(3) NOTIFICATION OF RIGHTS.—Upon the granting of temporary protected status under this section, the Attorney General shall notify the alien of the alien's rights and responsibilities under this section. Such notification shall be provided in a form and language that the alien can understand.

"(4) CLARIFICATION.—Nothing in this section shall be construed as authorizing the Attorney General to deny temporary protected status or to require any alien, as a condition of being granted such status, either to relinquish nonimmigrant or other status the alien may have or to execute any waiver of other rights under this Act. The granting of temporary protected status under this section shall not be considered to be inconsistent with the granting of nonimmigrant status under this Act.

"(b) DESIGNATIONS OF CHINA AND FOREIGN STATES IN GENERAL.—

"(1) DESIGNATION OF CHINA.—The People's Republic of China (in this section referred to as 'China') is hereby designated under this subsection.

"(2) DESIGNATION OF FOREIGN STATES IN GENERAL.—The Attorney General, after consultation with appropriate agencies of the Government, shall designate any foreign state (or, in the case of a finding under subparagraph (B), all or any part of such foreign state) under this subsection only if—

"(A) the Attorney General finds that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state would pose a substantial threat to their personal safety;

"(B) the Attorney General finds that—

"(i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,

"(ii) the foreign state is unable temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and

"(iii) the foreign state officially has requested designation under this subparagraph; or

"(C) the Attorney General finds that there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the Attorney General finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

A designation of a foreign state (or, in the case of a determination under subparagraph (B), all or any part of such foreign state) under this paragraph shall not become effective unless notice of the designation (including a statement of the findings under this paragraph and the effective date of the designation) is published in the Federal Register. In such notice, the Attorney General shall also state an estimate of the number of nationals of the foreign state designated who are (or within the effective period of the designation are likely to become) eligible for temporary protected status under this section and their immigration status in the United States.

"(3) EFFECTIVE PERIOD OF DESIGNATION FOR CHINA.—The designation of China under paragraph (1) shall take effect upon the date of the enactment of this section and shall remain in effect until the effective date of the termination of the designation under paragraph (5)(B). For purposes of applying the succeeding provisions of this section, China shall be considered to have been designated based upon a finding described in paragraph (2)(C). For purposes of this section, the initial period of designation for China under paragraph (1) is 3 years.

"(4) EFFECTIVE PERIOD OF DESIGNATION FOR OTHER FOREIGN STATES.—The designation of another foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) under paragraph (2) shall—

"(A) take effect upon the date of publication of the designation under such paragraph, or such later date as the Attorney may specify in the notice published under such paragraph, and

"(B) shall remain in effect until the effective date of the termination of the designation under paragraph (5)(B).

For purposes of this section, the initial period of designation of a foreign state (or part thereof) under paragraph (2) is the period, specified by the Attorney General, of not less than 6 months and not more than 18 months.

"(5) PERIODIC REVIEW, TERMINATIONS, AND EXTENSIONS OF DESIGNATIONS.—

"(A) PERIODIC REVIEW.—Not less often than annually the Attorney General, after consultation with appropriate agencies of the Government, shall review the conditions in each foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met.

"(B) TERMINATION OF DESIGNATION.—If the Attorney General determines under subparagraph (A) that a foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) no longer continues to meet the conditions for designation under paragraph (2), the Attorney General shall terminate the designation by publishing notice in the Federal Register of the determination under this subparagraph (including the basis for the determination). Such termination is effective in accordance with subsection (d)(3), but shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension under subparagraph (C) and, with respect to China, shall not be effective before the end of the 3-year period beginning on the date of the enactment of this section.

"(C) EXTENSION OF DESIGNATION.—If the Attorney General determines under subparagraph (A) that a foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) meets or continue to meet the conditions for designation under paragraph (2), the Attorney General shall extend the designation (for a 6-month, 12-month, or 18-month period) and shall provide on a timely basis for the publication of notice of the determination (including the basis for the extension) in the Federal Register.

"(6) INFORMATION CONCERNING PROTECTED STATUS AT TIME OF DESIGNATIONS.—Within the amounts otherwise appropriated to carry out this Act, at the time of a designation of a foreign state under this subsection (including the designation of China under paragraph (1)), the Attorney General shall make available information respecting the temporary protected status made available to aliens who are nationals of such designated foreign state.

"(7) JUDICIAL REVIEW.—There is no judicial review of any determination of the Attorney General with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection.

"(c) ALIENS ELIGIBLE FOR TEMPORARY PROTECTED STATUS.—

"(1) IN GENERAL.—

"(A) CHINESE NATIONALS.—Subject to paragraph (3), an alien who is national of China (for the period China is designated under subsection (b)(1)) meets the requirements of this paragraph only if—

"(i) the alien has been continuously physically present in the United States since the date of the enactment of this section;

"(ii) the alien has continuously resided in the United States since July 1, 1989;

"(iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is not ineligible for temporary protected status under paragraph (2)(B); and

"(iv) the alien registers under this section within the 180-day registration period (established by the Attorney General) beginning not later than 60 days after the date of the enactment of this section.

"(B) NATIONALS OF DESIGNATED FOREIGN STATES IN GENERAL.—Subject to paragraph (3), an alien, who is a national of a state designated under subsection (b)(2), meets the requirements of this paragraph only if—

"(i) the alien has been continuously physically present in the United States since the effective date of the most recent designation of that state;

"(ii) the alien has continuously resided in the United States since such date as the Attorney General may designate;

"(iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is not ineligible for temporary protected status under paragraph (2)(B); and

"(iv) to the extent and in a manner which the Attorney General establishes, the alien registers for the temporary protected status under this section during a registration period of not less than 180 days.

"(C) REGISTRATION FEE.—The Attorney General may require payment of a reasonable fee as a condition of registering an alien under subparagraph

4

(A)(iv) or (B)(iv) (including providing an alien with an 'employment authorized' endorsement or other appropriate work permit under this section). The amount of any such fee shall not exceed $50.

"(2) ELIGIBILITY STANDARDS.—

"(A) WAIVER OF CERTAIN GROUNDS FOR INADMISSIBILITY.—In the determination of an alien's admissibility as an immigrant for purposes of subparagraphs (A)(iii) and (B)(iii) of paragraph (1)—

"(i) the provisions of paragraphs (14), (20), (21), (25), and (32) of section 212(a) shall not apply;

"(ii) except as provided in clause (iii), the Attorney General may waive any other provision of section 212(a) in the case of individual aliens for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest; but

"(iii) the Attorney General may not waive—

"(I) paragraphs (9) and (10) (relating to criminals) of such section;

"(II) paragraph (23) of such section (relating to drug offenses), except for so much of such paragraph as relates to a single offense of simple possession of 30 grams or less of marijuana;

"(III) paragraphs (27) and (29) of such section (relating to national security); or

"(IV) paragraph (33) of such section (relating to those who assisted in the Nazi persecution).

"(B) ALIENS INELIGIBLE.—An alien shall not be eligible for temporary protected status under this section if the Attorney General finds that—

"(i) the alien has been convicted of a felony or two or more misdemeanors in the United States; or

"(ii) the alien is described in section 243(h)(2).

"(3) WITHDRAWAL OF TEMPORARY PROTECTED STATUS.—The Attorney General shall withdraw temporary protected status granted to an alien under this section if—

"(A) the Attorney General finds that the alien was not in fact eligible for such status under this section,

"(B) except as provided in paragraph (4) and permitted in subsection (f)(4), the alien has not remained continuously physically present in the United States from the date the alien first was granted temporary protected status under this section, or

"(C) the alien fails, without good cause, to register with the Attorney General annually, at the end of each 12-month period after the granting of such status, in a form and manner specified by the Attorney General.

"(4) TREATMENT OF BRIEF, CASUAL, AND INNOCENT DEPARTURES.—For purposes of paragraphs (1)(A)(i), (1)(B)(i), and (3)(B) of this subsection, an alien shall not be considered to have failed to maintain continuous physical presence in the United States by virtue of brief, casual, and innocent absences from the United States, without regard as to whether such absences were authorized by the Attorney General.

"(5) CONSTRUCTION.—Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for temporary protected status under this section.

"(6) RESTRICTION ON DISCLOSURE OF INFORMATION.—The provisions of section 245A(c)(5) shall apply to information furnished by an alien in order to be granted temporary protected status under this section in the same manner as such provisions apply with respect to information furnished pursuant to an application section 245A.

"(d) DOCUMENTATION.—

"(1) INITIAL ISSUANCE.—Upon the granting of temporary protected status to an alien under this section, the Attorney General shall provide for the issuance of such temporary documentation and authorization as may be necessary to carry out the purposes of this section.

"(2) PERIOD OF VALIDITY.—Subject to paragraph (3), such documentation and authorization shall be valid during the initial period of designation of the foreign state (or part thereof) involved and any extension of such period. The Attorney General may stagger the periods of validity of the documentation and authorization in order to provide for an orderly renewal of such documentation and authorization and for an orderly transition (under paragraph (3)) upon the termination of a designation of a foreign state (or, in the case of a determination under subsection (b)(2)(B), all or any part of such foreign state).

5

"(3) EFFECTIVE DATE OF TERMINATIONS.—If the Attorney General terminates the designation of a foreign state (or, in the case of a determination under subsection (b)(2)(B), all or any part of such foreign state) under subsection (b)(4)(B), such termination shall only apply to documentation and authorization issued or renewed after the effective date of the publication of notice of the determination under that subsection (or, at the Attorney General's option, after such period after the effective date of the determination as the Attorney General determines to be appropriate in order to provide for an orderly transition).

"(e) PERIOD OF TEMPORARY PROTECTED STATUS NOT COUNTED TOWARD OBTAINING SUSPENSION OF DEPORTATION BENEFIT.—With respect to an alien granted temporary protected status under this section, the period of such status shall not be counted as a period of physical presence in the United States for purposes of section 244(a), unless the Attorney General determines that extreme hardship exists. However, such period shall not cause a break in the continuity of residence of the period before and after such period for purposes of such section.

"(f) BENEFITS AND STATUS DURING PERIOD OF TEMPORARY PROTECTED STATUS.— During a period in which an alien is granted temporary protected status under this section—

"(1) the alien shall not be considered to be permanently residing in the United States under color of law;

"(2) shall not be eligible for any program of public assistance (furnished directly or through reimbursement, but not including the provision of professional non-medical services) under Federal law, except for treatment for an emergency medical condition as described in section 1903(v) of the Social Security Act;

"(3) may be deemed ineligible for public assistance by a State (as defined in section 101(a)(36)) or any political subdivision thereof which furnishes such assistance;

"(4) may travel abroad with the prior consent of the Attorney General; and

"(5) for purposes of adjustment of status under section 245 and change of status under section 248, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

"(g) EXCLUSIVE REMEDY.—Except as otherwise specifically provided, this section shall constitute the exclusive authority of the Attorney General under law to permit aliens who are or may become otherwise deportable or have been paroled into the United States to remain in the United States temporarily because of their particular nationality or region of foreign state of nationality.

"(h) ANNUAL REPORT.—Not later than March 1 of each year (beginning with 1990), the Attorney General, after consultation with the appropriate agencies of the Government, shall submit a report to the Committees on the Judiciary of the House of Representatives and of the Senate on the operation of this section during the previous year. Each report shall include—

"(1) a listing of the foreign states or parts thereof designated under this section,

"(2) the number of nationals of each such state who have been granted temporary protected status under this section and their immigration status before being granted such status, and

"(3) an explanation of the reasons why foreign states or parts thereof were designated under subsection (b)(2) and, with respect to foreign states or parts thereof previously designated, why the designation was terminated or extended under such subsection.".

(b) CLERICAL AMENDMENT.—The table of contents of such Act is amended by inserting after the item relating to section 244 the following new item:

"Sec. 244A. Temporary protected status.".

SEC. 3. EFFECTIVE DATE; TRANSITION.

(a) EFFECTIVE DATE.—The amendments made by this Act shall take effect on the date of the enactment of this Act.

(b) TRANSITION.—For purposes of adjustment of status under section 245 of the Immigration and Nationality Act (8 U.S.C. 1225) and change of status under section 248 of such Act (8 U.S.C. 1228) in the case of an alien who is a national of the People's Republic of China, who, as of June 5, 1989, was present in the United States in the lawful status of a nonimmigrant, and who elects or has elected to request the Immigration and Naturalization Service to defer the enforcement of departure (under instructions transmitted on or after June 7, 1989), such an alien shall be considered as having continued to maintain lawful status as such a nonimmigrant (and

6

to have maintained continuously a lawful status) during the period of such deferral of the enforcement of departure.

## PURPOSE OF LEGISLATION

The purpose of H.R. 2929, as amended, is to prevent the forced repatriation of nationals of the People's Republic of China for a minimum of three years. The bill also establishes a statutory framework governing the identification, processing, rights, and responsibilities of aliens who, because of generalized violence, natural disasters, or other unsettled conditions in their home country, should be allowed to remain temporarily in the United States.

## HISTORY OF LEGISLATION

Congressman Bruce A. Morrison, Chairman of the Subcommittee on Immigration, Refugees, and International Law, along with Congressmen Frank, Berman, Fish, Smith (Texas), and Barton, introduced H.R. 2929 on July 19, 1989. On July 20, the Subcommittee held a hearing on the question of how best to protect the safety of nationals of the People's Republic of China who are now in the United States.

H.R. 2929 was marked up by the Subcommittee on Immigration, Refugees, and International Law on July 20. As originally introduced, the bill would have prevented the Attorney General from returning nationals of the People's Republic of China for a period of two years. During Subcommittee mark-up an amendment was offered, and adopted, to extend this protection an additional year, for a period of three years. With this amendment the bill was favorably reported to the full Committee by voice vote.

H.R. 2929 is very similar to H.R. 2922 which passed the House in the 100th Congress. H.R. 2922 would have established a mechanism to allow the Attorney General to authorize aliens whose homelands are undergoing crises to remain in the United States temporarily. H.R. 2929 goes one step beyond H.R. 2922 in that H.R. 2929 would not only establish that type of general framework, but would also require the Attorney General to designate the People's Republic of China as a country whose nationals are deserving of temporary protection.

## COMMITTEE VOTE

H.R. 2929 was considered by the full Committee on July 28, 1989 and was ordered favorably reported, with an amendment in the nature of a substitute, by voice vote.

## NEED FOR LEGISLATION

### I. PROTECTION OF CHINESE NATIONALS

The current political crisis in the People's Republic of China (PRC) clearly amounts to extraordinary conditions that prevent Chinese abroad from returning to their homeland in safety at the present time. The crisis began in mid-April 1989, with mass demonstrations which led to the most serious popular opposition movement in the history of Chinese communist rule. The demonstrations were launched by students, workers, journalists, and govern-

ment and military personnel who demanded greater democratization, more freedom, and the removal of key government officials who opposed these goals. This Democracy Movement ignited an intense power struggle at the highest levels of the PRC's leadership.

By the second week of May, hundreds of thousands of protestors had brought Beijing and other major cities to a virtual standstill. Approximately 2,000 students initiated a hunger strike in Beijing's Tiananmen Square just prior to the start of Soviet Premier Mikhail Gorbachev's summit meeting with Chinese officials on May 15. The international press coverage, as well as subsequent difficulties in mobilizing a divided military, brought into question the power and credibility of China's old guard leadership. Yet the hardliners (led by Deng Xiaoping, Li Peng, and Yang Shangkun) were finally able to assert their control over moderates, led by Zhao Ziyang, who favored a more conciliatory approach to the demonstrations. In rapid succession, on May 19 and 20, Zhao reportedly "resigned" his position as Communist Party General Secretary and the government declared martial law in parts of Beijing. Uncertainty over China's internal power balance persisted, however, until, on June 3, fully armed military troops assaulted central Beijing. The army reportedly shot indiscriminately at demonstrators and citizens in and around Tiananmen Square. Estimated civilian casualties in the assault ranged as high as several thousand.

Since the violent military repression ended the Democracy Movement, it appears that the hardliners are consolidating and expanding their power. The government has declared participants in the demonstrations to be "counter-revolutionaries"—amounting to an accusation of treason. At least 29 people have been executed (according to a July 17 New York Times article) and thousands have been detained or arrested. In testimony before the Subcommittee on July 20, 1989, Mr. Lianchao Han, of the Yale University Association of Students and Scholars, spoke of the "continuing violations of international standards of human rights and decency":

> The Beijing massacre shocked the conscience of the world. Far more shocking, though less noted by the headlines, is the legacy of persecution—arbitrary arrests, mass detentions, and summary executions. Thousands may have died in the massacre but hundreds of millions are now repressed by brute terror.

The harsh measures which PRC leaders have utilized to quell dissent point to the need to protect Chinese nationals currently in the United States. Many Chinese in this country have actively protested their government's actions, some even calling for its overthrow. Students and scholars, in particular, have mobilized in opposition to the regime. The mere knowledge of a massacre which Chinese officials are trying to coverup—let alone such overt anti-government behavior—could subject these individuals to substantial risk should they now be forced to return to their homeland.

Fear for the safety of Chinese nationals in this country is based on more than just hypothetical concerns—there is substantial evidence that the Chinese Government's efforts at intimidation have reached the United States. Newspaper reports indicate that PRC officials have gathered documentary evidence against Chinese con-

8

ducting demonstrations in this country, presumably to be used upon their return to the PRC. Some student leaders in the United States have received threatening phone calls and have been visited by Chinese diplomatic officials, who have accused them of treason against the PRC.

On June 6, 1989, in response to the crisis in the PRC, President Bush announced that Chinese nationals in the United States who did not wish to return immediately to China would receive a "sympathetic hearing" from the Immigration and Naturalization Service. The following day the Service issued a wire to its field officers directing all Service officers to defer the enforced departure of all PRC nationals in the United States who (1) were in the United States on June 6, 1989, (2) have not been convicted of a criminal act in the United States, and (3) indicate an unwillingness to return to the PRC. While the Committee applauds this action, it also believes that the present program is ill-defined, leaves to Executive Branch discretion crucial issues (such as the question whether work authorization shall be made available to beneficiaries) and in some instances reflects positions that are unsound (such as the position that only convicted criminals shall be ineligible for protection). The Committee believes strongly that the Chinese program demonstrates the continuing need for a carefully crafted statute to replace the ad hoc approach devised in response to the Chinese emergency and, absent the enactment of legislation, likely to be devised in future instances involving similar circumstances.

## II. TEMPORARY PROTECTED STATUS IN GENERAL

The Immigration and Nationality Act, as amended by the Refugee Act of 1980, defines "refugee" as a person who is unable or unwilling to return to his native country because of "persecution, or a well-founded fear of persecution on account of race, religion, nationality, member in a particular social group, or political opinion." (8 U.S.C. 1101(a)(42)(A)). Similarly, an alien already in the United States who can demonstrate that he is a refugee may be granted asylum. (8 U.S.C. 1158(a)). And finally, the Refugee Act specifies that no alien shall be deported to a country where that alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. (8 U.S.C. 1253(h)).

Although there is no universally accepted definition of "persecution," it is clear under international law that a person fleeing a life-threatening natural disaster, such as a drought, cannot claim persecution—and therefore cannot be a refugee or asylee—on that basis. The "Handbook on Procedures and Criteria for Determining Refugee Status", which was published in 1979 by the United Nations High Commissioner for Refugees, speaks directly to this point: "The expression 'owing to a well-founded fear of persecution,' . . . by indicating a specific motive automatically makes all other reasons for escape irrelevant to the definition. *It rules out victims of famine or natural disaster,* unless they also have a well-founded fear of persecution for one of the reasons stated." (p. 12, emphasis added). Similarly, danger resulting from the existence of a generalized state of violence within a country does not, in itself,

9

constitute persecution. (See "UNHCR Handbook" p. 14). This view is consistent with U.S. domestic law. In *Chavez* v. *INS,* 723 F. 2d 1431, 1433 (9th Cir. 1984), for example, the court held that "tragic and widespread danger of violence" is not persecution under 8 U.S.C. 1253(h).

That an individual is not, and will not be, persecuted provides no guaranty that he will be allowed to lead a life of peace and security. If there is random violence or civil warfare in a country it is of little consolation to an individual struck by a stray bullet that the person who pulled the trigger was aiming at someone else. Similarly, environmental disasters are indiscriminate in their impact. They persecute no one, but may nonetheless prove life-threatening to those they affect.

In testimony before the Subcommittee on October 28, 1987 Assistant Secretary of State Richard Shifter spoke of the importance of filling this gap in existing law:

> Mr. Chairman, you mentioned at a hearing a few months ago, and again, just today, that aside from the categories of aliens now living in the United States which are recognized by existing legislation, there is another group which should be given the opportunity of such recognition. Namely, these are persons in the United States whose home countries are strife torn and yet they do not qualify for refugee status.

> We recognize, of course, that there are many such countries throughout the world and that we can't offer refuge to all those who are so affected. We believe, however, that you and your colleagues having recognized the risks posed, have drafted a bill which balances our humanitarian concerns with a need to prevent abuse.

> Our prepared modifications suggest further safeguards against further abuse of the humanitarian provisions of the bill. Therefore, Mr. Chairman, I am pleased to appear before you today to present the position of the Department of State on H.R. 2922, the Temporary Safe Haven Act of 1987.

> As I indicated, the State Department supports this bill as a reasonable and effective means of dealing with a very important humanitarian issue.

> We believe that the bill helps to fill the gap that exists in our current immigration laws, between the treatment of immigrants on the one hand, and refugees and those seeking asylum, on the other hand.

Recognizing that in some circumstances an individual who cannot show persecution may nonetheless be subjected to great danger if forced to returned home, every Administration since and including that of President Eisenhower has permitted one or more groups of otherwise deportable aliens to remain temporarily in the United States out of concern that the forced repatriation of these individuals could endanger their lives or safety. Since 1960, this deferral of deportation, which has come to be known as "Extended Voluntary Departure" (or "EVD") has been exercised for the benefit of aliens from 14 different nations.

10

During the October 28, 1987 hearing on H.R. 2922 Associate Commissioner of the Immigration and Naturalization Service (INS) Delia C. Combs explained the EVD process and some of its history as follows:

> The Attorney General is presently vested with authority to grant Extended Voluntary Departure (EVD) to nationals of certain countries when various conditions are present. This has normally been done upon the recommendations of the Secretary of State.
>
> Over the past 25 years, enforcement of the deportation provisions of the INA have been suspended temporarily for nationals of many different countries.
>
> For example, EVD was granted to Cubans, effective November 29, 1960, and terminated November 2, 1966, when the Cuban Adjustment Act was passed. From 1968–1977, EVD was granted to Czechoslovakians in one-year increments.
>
> Laotians, Vietnamese and Cambodians received EVD for a two-year period (from 1975–1977) until the Indochinese relief legislation providing for their adjustment of status was passed.
>
> From July 12, 1977, until August 26, 1981, Ethiopians received EVD, and such relief is still in effect for those who arrived in the U.S. prior to July 1, 1980. From June 8, 1978, to September 30, 1986, Ugandan nationals were granted EVD.
>
> Afghans have, since 1980, been allowed to remain in the United States. Nicaraguans were given voluntary departure over a 15-month period immediately after the fall of the Somoza Government. Polish nationals who entered prior to July 22, 1984, have been granted Extended Voluntary Departure through December 31, 1987.
>
> I hope that the above illustrations give the committee a good idea of the Attorney's General's use of his discretionary authority to extend the voluntary departure of aliens in appropriate circumstances.
>
> While it is true that EVD has been granted at times when countries have been experiencing significant civil disturbances, there does not exist any specific criteria, such as the occurrence of violence or political instability, by which grants of Extended Voluntary Departure are granted. The decisions made as to EVD are reached on a situation by situation basis and are not readily susceptible to comparison or generalization.
>
> Each determination is based on examination of a variety of factors unique to each country's situation. However, as reflected by our immigration laws, it is an unfortunate reality that our country cannot provide sanctuary to all foreign nationals whose homelands are experiencing political or economic misfortune.
>
> Under our present EVD policy, aliens are permitted to remain temporarily in the United States pursuant to recommendations and findings by the Department of State

11

based on foreign policy, humanitarian and immigration concerns and if the Attorney General concurs.

During that same hearing, former Acting Commissioner of the INS Doris Meissner shed additional light on the EVD process:

> There is no specific statutory authority for EVD nor is it a term that appears in the Immigration & Nationality Act (INA). Yet EVD actions have been taken at least since 1960. In the only suit that has challenged the government's handling of EVD, a federal district court upheld the government. Successive administrations have concluded that EVD is a proper exercise of the Attorney General's inherent discretion not to remove certain individuals from the country. This inherent authority allows for extra-statutory relief to be fashioned. EVD is an example of one such form of relief.
>
> EVD recommendations are generally initiated by the Secretary or Deputy Secretary of State who sends a letter to the Attorney General. The letter describes conditions in the country under consideration and explains why return by its nationals from the United States in the normal course should be suspended. This practice reflects the need for the Department of State's expertise regarding country conditions and its judgment that EVD is not inconsistent with U.S. interests in a particular case. Transmittal of the Secretary's letter is usually preceded by staff consultation among officials of the National Security Council, the Department of Justice, and the Immigration and Naturalization Service (INS).
>
> Upon receipt, Justice and INS officials sometimes schedule meetings with their counterparts in the State Department to learn more about the reasons for the request. Or, they may ask for further written information on country conditions or U.S. policy objectives. Sometimes Justice modifies the period for the EVD, characteristically preferring a maximum grant of six months. But once a recommendation letter is sent by the Secretary of State, I am unaware that EVD has ever been denied. The Attorney General responds in writing, advising the Secretary of the effective date and terms of the EVD.
>
> Implementation is carried out by the INS. It consists of instructing field offices not to enforce deportation and removal requirements for persons of a particular nationality group who arrived in the U.S. before a specified date. Beneficiaries may depart voluntarily and are not protected if they have committed certain crimes. They are not required to register with immigration authorities but must come to a district office to obtain employment authorization if they need to work.

According to former INS Commissioner Alan C. Nelson, the authority to grant EVD is based on section 242(b) of the Immigration and Nationality Act (8 U.S.C. 1252(b)). This section of the law authorizes the Attorney General, in his discretion, to forego the insti-

12

tution of deportation proceedings "in the case of any alien who admits to belonging to a class of aliens who are deportable . . . if such alien voluntarily departs from the United States at his own expense . . ." This provision, which constitutes the sole statutory authority upon which EVD is based, clearly does not directly authorize deferring the deportation of an entire nationality of aliens and arguably speaks to the method of deportation (voluntarily versus involuntarily) rather than whether deportation should occur at all.

The Committee finds it highly relevent that each of the past eight Administrations, whether Democratic or Republican, liberal or conservative, has deemed safe haven such an integral and important instrument of U.S. immigration policy that it has been willing to engage in a generous reading of existing law in order to achieve that result. The Committee is convinced that *the simple fact that during the past 29 years only two months have gone by (March and April, 1989) during which there was not at least one group of aliens present in the United States under EVD status demonstrates unequivocally the continuing and compelling need for a "temporary protected status" program.*

While the Executive branch is to be commended for its efforts to protect endangered aliens by granting them EVD, the Committee believe that the current temporary protected status (*i.e.,* EVD) program is seriously flawed and in urgent need of reform. Some of the more glaring deficiencies in the present program are as follows:

 (1) Medical screening—including testing for AIDS—is never performed:

 (2) The INS does not maintain figures on the number of individuals who have been granted temporary protected status, and is unable to supply Congress with even a reliable estimate;

 (3) The INS cannot effectuate the departation of aliens whose EVD status has expired, since it does not monitor those aliens' whereabouts;

 (4) The registration process is decentralized; depending on the circumstances it might be handled within the INS by the Examination Section, the Investigations Branch, or the Deportation Branch;

 (5) The conditions under which temporary protected status may be granted, extended or terminated do not appear in any regulation. Moreover, Congress and the public learn of such decisions only through press releases.

 (5) The conditions under which temporary protected status may be granted, extended or terminated do not appear in any regulation. Moreover, Congress and the public learn of such decisions only through press releases.

 (6) Once the Attorney General decides to grant aliens from a specified country temporary protected status, all aliens from that country, except those who have criminal convictions, are eligible for temporary protected status. Thus, terrorists, drug traffickers, intelligence agents, and even Nazis are eligible for EVD.

Each of these deficiencies is addressed and corrected by H.R. 2929.

13

## ANALYSIS OF LEGISLATION

### I. TEMPORARY PROTECTED STATUS IN GENERAL

H.R. 2929, as amended, sets forth the circumstances under which a grant of Temporary Protected Status (TPS) would be appropriate, imposes certain notice and publication requirements on the Attorney General concerning TPS decisions, and describes the rights and responsibilities of aliens from countries whose nationals have been accorded TPS. The bill in no way modifies the refugee, asylum, or withholding of deportation laws of the United States, nor does the bill itself provide TPS to any particular groups of aliens, other than the Chinese (discussed below).

H.R. 2929, as amended, vests the authority to grant TPS in the Attorney General, after consultation with appropriate agencies of the federal government. The Department of State would be one such agency, though other agencies may also be appropriate, depending on the circumstances.

TPS may be granted to aliens of a foreign country if the Attorney General finds that (1) there is an ongoing armed conflict within the aliens' home country and the return of aliens to that country would pose a substantial threat to their physical safety; or (2) there has been an environmental disaster (whether natural or man-made) in the aliens' home country that has resulted in a temporary but substantial disruption of living conditions in the affected area, *and* the home country would be unable to handle adequately the return of those aliens, *and* the home country has officially asked the United States to grant TPS to its nationals; or (3) other extraordinary and temporary conditions exist in the aliens' home country that endanger physical safety, unless permitting nationals of that country to remain here temporarily would, for clearly articulable reasons, be contrary to the national interest of the United States.

A designation of a country under either the first or third categories (above) will result in the granting of TPS to all eligible aliens in the United States who are nationals of that country. In the case of the second category (environmental disasters) the Attorney General may provide TPS either to all the eligible aliens in the United States who are nationals of that country, or, alternatively, only to those eligible aliens in the United States who are nationals of that country and residents of the affected area. The Committee wishes to underscore the fact that regardless of which category is invoked, H.R. 2929, as amended, does *not* create an admissions program. It is designed to protect individuals already in the United States and gives no alien any right to come to the United States.

The bill requires the Attorney General to publish notice and findings of fact in the Federal Register whenever he decides to (1) grant TPS, (2) extend a previous grant, or (3) terminate TPS. In the Attorney General's discretion, TPS may be granted for as few as six months or as many as 18 months, and extensions may be made in 6-month, 12-month, or 18-month increments. Moreover, the bill gives the Attorney General authority to decide that only those aliens in the United States as of a specified date shall be eligible for TPS. The Attorney General may terminate TPS at any time,

14

but under no circumstance can a termination of TPS become effective prior to 60 days from the date of the announced termination or through inaction on the part of the Attorney General. TPS, however, can be withdrawn immediately in individual cases if the Attorney General finds that a particular individual was not, or is no longer, eligible.

The legislation also makes clear that an individual need not relinquish any other immigration status the individual may have in order to receive TPS, nor shall the request for TPS or its conferral be considered inconsistent with any other immigration status. In the case of an alien who receives TPS while also maintaining some other status it is the Committee's intent that the alien remain subject to the terms and conditions of that status but only insofar as those terms and conditions do not impinge upon rights conferred by TPS.

Once a country has been designated, aliens in the United States from that country, whether here legally or illegally, who wish to receive TPS will be required to register and pay a one-time registration fee of up to $50 to defray adjudication costs. They will also be required to re-register annually. No alien will be granted TPS if he is found excludable under those provisions of existing law relating to criminals (paragraphs (9) and (10) of 8 U.S.C. 1152(a)), drug offenses (paragraph (23)), national security (paragraphs (27) and (29)), and the Nazi persecution (paragraph (33)). In addition, no alien who has been convicted of a felony or two misdemeanors in the United States is eligible for TPS. Regarding medical screening for dangerous contagious diseases, H.R. 2929, as amended, establishes in general principle that medical screening should be performed, although this requirement may be waived by the Attorney General.

Aliens who have received TPS are to be provided work authorization documents. With limited exceptions, however, they will not be eligible to participate in programs of public assistance furnished under federal law. Moreover, none of the Attorney General's decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.

The bill specifies that this legislation is intended to supplant section 242(b) of the Immigration and Nationality Act (the basis for EVD) as the sole and exclusive authority under which safe haven may be provided. Moreover, the legislation does not permit the Attorney General to craft a different safe haven program for an entire class of people on the basis of any alleged prosecutorial discretion. And finally, in the event the Attorney General is compelled to parole temporarily into the United States a significant number of arriving undocumented aliens (as occurred, for example, during the 1980 Mariel Cuban episode and during the Haitian influx of the late 1970's and 1980's) the arriving aliens shall be treated as applicants for TPS and not as parolees.

## II. PROTECTION OF CHINESE NATIONALS

H.R. 2929, as amended, directs the Attorney General to grant TPS to all nationals of the People's Republic of China who (1) have been continuously physically present in the United States since the

15

date of enactment of this legislation, (2) have continuously resided in the United States since July 1, 1989, (3) register within the 180-day registration period, and (4) are not excludable from TPS under the terms of the bill. The bill specifies that such status shall remain in effect for no less than three years from the date of enactment. After three years, the decision whether to extend the designation will rest with the Attorney General, but in either event the Attorney General will be required to publish findings of fact beforehand.

## ADMINISTRATION POSITION

The Administration opposes the enactment of this legislation.

## OVERSIGHT STATEMENT

Pursuant to clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee states that it has exercised close oversight with regard to the administration of the Immigration and Nationality Act in general and Extended Voluntary Departure programs in particular and will continue to do so.

Clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives is inapplicable since no oversight findings and recommendations have been received from the Committee on Government Operations.

## INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(l)(4) of rule XI of the Rules of the House of Representatives, the Committee estimates that this bill will not have an inflationary effect on prices and costs in the operation of the national economy.

## ESTIMATE OF COST

Pursuant to clause 7, rule XII of the Rules of the House of Representatives, the Committee concurs with the cost estimates set forth below by the Congressional Budget Office.

## BUDGETARY INFORMATION

Clause 2(l)(3)(B) of rule XI of the Rules of the House of Representatives is inapplicable because the instant legislation does not provide new budget authority. Pursuant to Clause 2(l)(3)(C) of rule XI, the following estimate was prepared by the Congressional Budget Office and submitted to the Committee:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, September 5, 1989.*

Hon. JACK BROOKS,
*Chairman, Committee on the Judiciary,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has reviewed H.R. 2929, the Chinese Temporary Protected Status Act of 1989, as ordered reported by the House Committee on the Judiciary, July 28, 1989.

16

Based on information provided by the Immigration and Naturalization Service (INS), CBO estimates that enacting this bill would result in no net cost to the federal government. H.R. 2929 would modify the procedures for the Attorney General to grant temporary stays for aliens whose countries are disrupted by political events or natural disasters, and would require the Attorney General to grant such a stay for nationals of the People's Republic of China.

Any costs associated with these new procedures would be paid out of fees authorized by the bill. These costs would probably be less than $1 million annually.

No costs would be incurred by state or local governments as a result of enactment of H.R. 2929.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Michael Sieverts, who can be reached at 226–2860.

Sincerely,

ROBERT D. REISCHAUER,
*Director.*

## COMMITTEE RECOMMENDATION

After careful consideration of this legislation, the Committee is of the opinion that this bill should be enacted and accordingly recommends that H.R. 2929, as amended, do pass.

## CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

### IMMIGRATION AND NATIONALITY ACT

\*    \*    \*    \*    \*    \*    \*

#### TABLE OF CONTENTS

\*    \*    \*    \*    \*    \*    \*

#### TITLE II—IMMIGRATION

\*    \*    \*    \*    \*    \*    \*

##### CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS

Sec. 241. General classes of deportable aliens.
Sec. 242. Apprehension and deportation of aliens.
Sec. 242A. Expedited Procedures for deportation of aliens convicted of commiting aggravated felonies.
Sec. 243. Countries to which aliens shall be deported; cost of deportation.
Sec. 244. Suspension of deportation; voluntary departure.
*Sec. 244A. Temporary protected status.*

\*    \*    \*    \*    \*    \*    \*

#### TITLE II—IMMIGRATION

\*    \*    \*    \*    \*    \*    \*

17

## Chapter 5—Department; Adjustment of Status

\*       \*       \*       \*       \*       \*       \*

### *TEMPORARY PROTECTED STATUS*

SEC. 244A. (A) GRANTING OF STATUS.—

(1) IN GENERAL.—*In the case of an alien who is a national of a foreign state designated under subsection (b) and who meets the requirements of subsection (c), the Attorney General, in accordance with this section—*

(A) *shall grant the alien temporary protected status in the United States and shall not deport the alien from the United States during the period in which such status is in effect, and*

(B) *shall authorize the alien to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit.*

(2) DURATION OF WORK AUTHORIZATION.—*Work authorization provided under this section shall be effective throughout the period the alien is in temporary protected status under this section.*

(3) NOTIFICATION OF RIGHTS.—*Upon the granting of temporary protected status under this section, the Attorney General shall notify the alien of the alien's rights and responsibilities under this section. Such notification shall be provided in a form and language that the alien can understand.*

(4) CLARIFICATION.—*Nothing in this section shall be construed as authorizing the Attorney General to deny temporary protected status to an alien based on the alien's immigration status or to require any alien, as a condition of being granted such status, either to reliquish nonimmigrant or other status the alien may have or to execute any waiver of other rights under this Act. The granting of temporary protected status under this section shall not be considered to be inconsistent with the granting of nonimmigrant status under this Act.*

(b) DESIGNATIONS OF CHINA AND FOREIGN STATES IN GENERAL.—

(1) DESIGNATION OF CHINA.—*The People's Republic of China (in this section referred to as "China") is hereby designated under this subsection.*

(2) DESIGNATION OF FOREIGN STATES IN GENERAL.—*The Attorney General, after consultation with appropriate agencies of the Government, shall designate any foreign state (or, in the case of a finding under subparagraph (B), all or any part of such foreign state) under this subsection only if—*

(A) *the Attorney General finds that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state would pose a substantial threat to their personal safety;*

(B) *the Attorney General finds that—*

(i) *there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state re-*

18

*sulting in a substantial, but temporary, disruption of living conditions in the area affected.*

*(ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and*

*(iii) the foreign state officially has requested designation under this subparagraph; or*

*(C) the Attorney General find that there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the states from returning to the state in safety, unless the Attorney General finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.*

*A designation of a foreign state (or, in the case of a determination under subparagraph (B), all or any part of such foreign state) under this paragraph shall not become effective unless notice of the designation (including a statement of the findings under this paragraph and the effective date of the designation) is published in the Federal Register. In such notice, the Attorney General shall also state an estimate of the number of nationals of the foreign state designated who are (or within the effective period of the designation are likely to become) eligible for temporary protected status under this section and their immigration status in the United States.*

*(3) EFFECTIVE PERIOD OF DESIGNATION FOR CHINA.—The designation of China under paragraph (1) shall take effect upon the date of the enactment of this section and shall remain in effect until the effective date of the termination of the designation under paragraph (5)(B). For purposes of applying the succeeding provisions of this section, China shall be considered to have been designated based upon a finding described in paragraph (2)(C). For purposes of this section, the initial period of designation for China under paragraph (1) is 3 years.*

*(4) EFFECTIVE PERIOD OF DESIGNATION FOR OTHER FOREIGN STATES.—The designation of another foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) under paragraph (2) shall—*

*(A) take effect upon the date of publication of the designation under such paragraph, or such later date as the Attorney may specify in the notice published under such paragraph, and*

*(B) shall remain in effect until the effective date of the termination of the designation under paragraph (5)(B).*

*For purposes of this section, the initial period of designation of a foreign state (or part thereof) under paragraph (2) is the period, specified by the Attorney General, of not less than 6 months and not more than 18 months.*

*(5) PERIODIC REVIEW, TERMINATIONS, AND EXTENSIONS OF DESIGNATIONS.—*

*(A) PERIODIC REVIEW.—Not less often than annually the Attorney General, after consultation with appropriate agencies of the Government, shall review the conditions in each foreign state (or, in the case of a determination under para-*

19

graph (2)(B), all or any part of such foreign state) for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met.

(B) TERMINATION OF DESIGNATION.—If the Attorney General determines under subparagraph (A) that a foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) no longer continues to meet the conditions for designation under paragraph (2), the Attorney General shall terminate the designation by publishing notice in the Federal Register of the determination under this subparagraph (including the basis for the determination). Such termination is effective in accordance with subsection (d)(3), but shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension under subparagraph (C) and, with respect to China, shall not be effective before the end of the 3-year period beginning on the date of the enactment of this section.

(C) EXTENSION OF DESIGNATION.—If the Attorney General determines under subparagraph (A) that a foreign state (or, in the case of a determination under paragraph (2)(B), all or any part of such foreign state) meets or continue to meet the conditions for designation under paragraph (2), the Attorney General shall extend the designation (for a 6-month, 12-month, or 18-month period) and shall provide on a timely basis for the publication of notice of the determination (including the basis for the extension) in the Federal Register.

(6) INFORMATION CONCERNING PROTECTED STATUS AT TIME OF DESIGNATIONS.—Within the amounts otherwise appropriated to carry out this Act, at the time of a designation of a foreign state under this subsection (including the designation of China under paragraph (1)), the Attorney General shall make available information respecting the temporary protected status made availasble to aliens who are nationals of such designated foreign state.

(7) JUDICIAL REVIEW.—There is no judicial review of any determination of the Attorney General with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection.

(c) ALIENS ELIGIBLE FOR TEMPORARY PROTECTED STATUS.—
  (1) IN GENERAL.—
    (A) CHINESE NATIONALS.—Subject to paragraph (3), an alien who is national of China (for the period China is designated under subsection (b)(1)) meets the requirements of this paragraph only if—
      (i) the alien has been continuously physically present in the United States since the date of the enactment of this section;
      (ii) the alien has continuously resided in the United States since July 1, 1989;
      (iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is

20

*not ineligible for temporary protected status under paragraph (2)(B); and*

    *(iv) the alien registers under this section within the 180-day registration period (established by the Attorney General) beginning not later than 60 days after the date of the enactment of this section.*

  *(B) NATIONALS OF DESIGNATED FOREIGN STATES IN GENERAL.—Subject to paragraph (3), an alien, who is a national of a state designated under subsection (b)(2), meets the requirements of this paragraph only if—*

    *(i) the alien has been continuously physically present in the United States since the effective date of the most recent designation of that state;*

    *(ii) the alien has continuously resided in the United States since such date as the Attorney General may designate;*

    *(iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is not ineligible for temporary protected status under paragraph (2)(B); and*

    *(iv) to the extent and in a manner which the Attorney General establishes, the alien registers for the temporary protected status under this section during a registration period of not less than 180 days.*

  *(C) REGISTRATION FEE.—The Attorney General may require payment of a reasonable fee as a condition of registering an alien under subparagraph (A)(iv) or (B)(iv) (including providing an alien with an "employment authorized" endorsement or other appropriate work permit under this section). The amount of any such fee shall not exceed $50.*

*(2) ELIGIBILITY STANDARDS.—*

  *(2) WAIVER OF CERTAIN GROUNDS FOR INADMISSIBILITY.—In the determination of an alien's admissibility as an immigrant for purposes of subparagraphs (A)(iii) and (B)(iii) of paragraph (1)—*

    *(i) the provisions of paragraphs (14), (20), (21), (25), and (32) of section 212(a) shall not apply;*

    *(ii) except as provided in clause (iii), the Attorney General may waive any other provision of section 212(a) in the case of individual aliens for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest; but*

    *(iii) the Attorney General may not waive—*

      *(I) paragraphs (9) and (10) (relating to criminals) of such section;*

      *(II) paragrpah (23) of such section (relating to drug offenses), except for so much of such paragraph as relates to a single offense of simple possession of 30 grams or less of marijuana;*

      *(III) paragraphs (27) and (29) of such section (relating to national secuirty); or*

      *(IV) paragraph (33) of such section (relating to those who assisted in the Nazi persecution).*

21

(B) ALIENS INELIGIBLE.—An alien shall not be eligible for temporary protected sttus under this section if the Attorney General finds that—

(i) the alien has been convicted of a felony or two or more misdemeanors in the United States; or

(ii) the alien is described in section 243(h)(2).

(3) WITHDRAWAL OF TEMPORARY PROTECTED STATUS.—The Attorney General shall withdraw temporary protected status granted to an alien under this section if—

(A) the Attorney General finds that the alien was not in fact eligible for such status under this section,

(B) except as provided in paragraph (4) and permitted in subsection (f)(4), the alien has not remained continuously physically present in the United States from the date the alien first was granted temporary protected status under this section, or

(C) the alien fails, without good cause, to register with the Attorney General annually, at the end of each 12-month period after the granting of such status, in a form and manner specified by the Attorney General.

(4) TREATMENT OF BRIEF, CASUAL, AND INNOCENT DEPARTURES.—For purposes of paragraphs (1)(A)(i), (1)(B)(i), and (3)(B) of this subsection, an alien shall not be considered to have failed to maintain continuous physical presence in the United States by virtue of brief, casual, and innocent absences from the United States, without regard as to whether such absences were authorized by the Attorney General.

(5) CONSTRUCTION.—Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for temporary protected status under this section.

(6) RESTRICTION ON DISCLOSURE OF INFORMATION.—The provisions of section 245A(c)(5) shall apply to information furnished by an alien in order to be granted temporary protected status under this section in the same manner as such provisions apply with respect to information furnished pursuant to an application section 245A.

(d) DOCUMENTATION.—

(1) INITIAL ISSUANCE.—Upon the granting of temporary protected status to an alien under this section, the Attorney General shall provide for the issuance of such temporary documentation and authorization as may be necessary to carry out the purposes of this section.

(2) PERIOD OF VALIDITY.—Subject to paragraph (3), such documentation and authorization shall be valid during the initial period of designation of the foreign state (or part thereof) involved and any extension of such period. The Attorney General may stagger the periods of validity of the documentation and authorization in order to provide for an orderly renewal of such documentation and authorization and for an orderly transition (under paragraph (3)) upon the termination of a designation of a foreign state (or, in the case of a determination under subsection (b)(2)(B), all or any part of such foreign state).

22

(3) EFFECTIVE DATE OF TERMINATION.—If the Attorney General terminates the designation of a foreign state (or, in the case of a determination under subsection (b)(2)(B), all or any part of such foreign state) under subsection (b)(4)(B), such termination shall only apply to documentation and authorization issued or renewed after the effective date of the publication of notice of the determination under that subsection (or, at the Attorney General's option, after such period after the effective date of the determination as the Attorney General determines to be appropriate in order to provide for an orderly transition).

(e) PERIOD OF TEMPORARY PROTECTED STATUS NOT COUNTED TOWARD OBTAINING SUSPENSION OF DEPORTATION BENEFIT.—With respect to an alien granted temporary protected status under this section, the period of such status shall not be counted as a period of physical presence in the United States for purposes of section 244(a), unless the Attorney General determines that extreme hardship exists. However, such period shall not cause a break in the continuity of residence of the period before and after such period for purposes of such section.

(f) BENEFITS AND STATUS DURING PERIOD OF TEMPORARY PROTECTED STATUS.—During a period in which an alien is granted temporary protected status under this section—

(1) the alien shall not be considered to be permanently residing in the United States under color of law;

(2) shall not be eligible for any program of public assistance (furnished directly or through reimbursement, but not including the provision of professional non-medical services) under Federal law, except for treatment for an emergency medical condition as described in section 1903(v) of the Social Security Act;

(3) may be deemed ineligible for public assistance by a State (as defined in section 101(a)(36)) or any political subdivision thereof which furnishes such assistance;

(4) may travel abroad with the prior consent of the Attorney General; and

(5) for purposes of adjustment of status under section 245 and change of status under section 248, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

(g) EXCLUSIVE REMEDY.—Except as otherwise specifically provided, this section shall constitute the exclusive authority of the Attorney General under law to permit aliens who are or may become otherwise deportable or have been paroled into the United States to remain in the United States temporarily because of their particular nationality or region of foreign state of nationality.

(h) ANNUAL REPORT.—Not later than March 1 of each year (beginning with 1990), the Attorney General, after consultation with the appropriate agencies of the Government, shall submit a report to the Committees on the Judiciary of the House of Representatives and of the Senate on the operation of this section during the previous year. Each report shall include—

(1) a listing of the foreign states or parts thereof designated under this section,

(2) the number of nationals of each such state who have been granted temporary protected status under this section and their immigration status before being granted such status, and

23

*(3) an explanation of the reasons why foreign states or parts thereof were designated under subsection (b)(2) and, with respect to foreign states or parts thereof previously designated, why the designation was terminated or extended under such subsection.*

\*     \*     \*     \*     \*     \*     \*

O

# Document No. 18