YAAKOV M. ROTH
Acting Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ANNA L. DICHTER
LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
AMANDA SAYLOR
ERIC SNYDERMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-1263
Facsimile: (202) 305-7000
E-mail: amanda.b.saylor@usdoj.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HAITIAN-AMERICANS UNITED, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>          Defendants. | Case No. 1:25-cv-10498 |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION
OVER ALL OF PLAINTIFFS' CLAIMS.................................................................. 2

    A.    8 U.S.C. § 1254a(b)(5)(A) Expressly Bars Review of TPS
Determinations ............................................................................................. 2

    B.    The APA Precludes Review of the TPS Determinations............................. 5

    C.    8 U.S.C. § 1252(f)(1) Bars Judicial Review by This Court ........................ 5

II.    PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED AN APA
VIOLATION .............................................................................................................. 6

    A.    The Secretary's Determinations Were Not Contrary to the Law................. 6

    B.    The Secretary's Termination and Vacatur Were Not Arbitrary and
Capricious. ................................................................................................. 11

III.    PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS ...................................... 12

    A.    Trump v. Hawaii Provides the Appropriate Standard of Review. ............. 12

    B.    Plaintiffs Fail to State a Claim Even Under a Heightened Standard
of Review. .................................................................................................. 13

IV.    The Declaratory Judgment Act Does Not Provide Plaintiffs a Basis for
Relief......................................................................................................................... 15

CONCLUSION............................................................................................................................. 16

## TABLE OF AUTHORITIES
### CASES

*Albertson v. FCC*,
    182 F.2d 397 (D.C. Cir. 1950) ................................................................................ 7

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006) ................................................................................ 3, 4

*Brasil v. Sec'y, Dep't of Homeland Sec.*,
    28 F.4th 1189 (11th Cir. 2022) ................................................................................ 15

*Daylily Farms, Inc. v. Chao*,
    357 F. Supp. 2d 356 (D. Mass. 2005) ................................................................................ 15

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) ................................................................................ 15

*DHS v. Regents*,
    591 U.S. 1 (2020) ................................................................................ 14

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ................................................................................ 11

*Flores v. Garland*,
    72 F.4th 85 (5th Cir. 2023) ................................................................................ 15

*Galvan v. Press*,
    347 U.S. 522 (1954) ................................................................................ 13

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ................................................................................ 5, 6

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ................................................................................ 12

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................ 12

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010) ................................................................................ 1

*Ivy Sports Medicine, LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2014) ................................................................................ 7, 8

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ................................................................................ 6

*Kelch v. Dir., Nev. Dep't of Prisons*,
    10 F.3d 684 (9th Cir. 1993) ............................................................................. 7

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ............................................................................. 7

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002) ............................................................................. 7

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ................................................................................... 12, 13

*Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) ......................................................................... 7

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991) ......................................................................................... 4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ......................................................................................... 11

*National TPS Alliance v. Noem, et al.*,
    --- F. Supp. 3d ----, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) ...................... 1, 3

*Noem v. National TPS Alliance*,
    No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025) .................................... 1, 3

*Poursina v. U.S. Citizenship & Immigr. Servs.*,
    936 F.3d 868 (9th Cir. 2019) ....................................................................... 5, 15

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ....................................................................... 4, 15

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ................................................................................. 12, 13

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................. 13, 14

## STATUTES

5 U.S.C. § 701(a)(2) ............................................................................................. 5

8 U.S.C. § 1160(e)(1) ........................................................................................... 4

8 U.S.C. § 1254a ............................................................................................. 5, 6

8 U.S.C. § 1254a(b) ......................................................................................... 2, 6

8 U.S.C. § 1254a(b)(1)(C) ............................................................................................. 10

8 U.S.C. § 1254a(b)(3) .................................................................................................... 9

8 U.S.C. § 1254a(b)(3)(A) .............................................................................................. 6

8 U.S.C. § 1254a(b)(3)(B) .......................................................................................... 6, 10

8 U.S.C. § 1254a(b)(3)(C) .............................................................................................. 6

8 U.S.C. § 1254a(b)(5)(A) ............................................................................... 1, 2, 3, 4, 12

8 U.S.C. § 1252(f)(1) ............................................................................................... 2, 5, 6

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 16

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 16

Fed. R. Civ. P. 21 ......................................................................................................... 16

## OTHER AUTHORITIES

*Consideration and Recission of Termination of the Designation of El Salvador for [TPS];
    Extension of the [TPS] Extension for El Salvador,*
    88 Fed. Reg. 40,282 (Jun. 21, 2023) ...................................................................... 6

*Vacatur of 2025 Temporary Protected Status Decision
    for Venezuela,* 90 Fed. Reg. 8,806 (Feb. 3, 2025) ............................................... 7, 9

*Partial Vacatur of 2024 Temporary Protected Status Decision
    for Haiti,* 90 Fed. Reg. 10,511 (Feb. 24, 2025) .............................................. 7, 9, 10

**INTRODUCTION**

The Supreme Court's May 19, 2025 order in *Noem v. National TPS Alliance*, No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025), which granted the government's application for a stay of a district court order in a nearly identical lawsuit, underscores the strength of the government's position in this case. By an 8-1 majority, the Supreme Court ruled that the government is likely to succeed in challenging a district court order accepting the same legal theories advanced by Plaintiffs in this case. *See National TPS Alliance v. Noem, et al.*, --- F. Supp. 3d ----, 2025 WL 957677, at *47 (N.D. Cal. Mar. 31, 2025); ECF No. 38 (Plaintiffs submitting a copy of the *National TPS Alliance* order as support for their position); *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam) (in order to "obtain a stay pending the filing and disposition of a petition for writ of certiorari, an applicant must show," among other things, "a fair prospect that a majority of the Court will vote to reverse the judgment below"). By the same measure, the Court should grant Defendants' motion to dismiss in this case.

The issues before this Court are straightforward. First, the Court lacks subject matter jurisdiction because the Immigration and Nationality Act ("INA") reflects Congress' clear choice to preclude judicial review of "*any* determination . . . with respect to the designation, or termination, or extension of a designation of foreign state" for Temporary Protected Status ("TPS"). 8 U.S.C. § 1254a(b)(5)(A). Secretary of Homeland Security Kristi Noem's determinations to vacate and partially vacate TPS extensions for Venezuela and Haiti, and her determination to terminate TPS for Venezuela, are plainly within the ambit of the INA's bar to judicial review over TPS determinations. A separate provision of the INA—8 U.S.C.

§ 1252(f)(1)—likewise bars this Court from "enjoin[ing] or restrain[ing]" the Secretary's authority to designate, extend, or terminate TPS under 8 U.S.C. § 1254a(b).

Second, even if judicial review were available, Plaintiffs have not plausibly alleged how the Secretary's reasoned decision-making, pursuant to a broad delegation of authority by Congress, was nonetheless "contrary to law" or "arbitrary and capricious." Nor have Plaintiffs plausibly alleged that the Secretary's actions violate their rights to equal protection or substantive due process. The Supreme Court has long held—and recently reaffirmed—that constitutional challenges to immigration policy choices are reviewed for rational basis. Properly reviewed under the rational basis standard, Plaintiffs' constitutional claims do not state a claim that is plausible on its face. Even under a heightened review standard, the Court should dismiss Plaintiffs' constitutional claims because their claims of discriminatory animus rest entirely on public statements of the Secretary and the President that are remote in time from the challenged TPS determinations and made in unrelated contexts. And more fundamentally, the statements on which Plaintiffs rely simply reflect concern regarding illegal immigration and criminal activity and have nothing to do with race or ethnicity.

## ARGUMENT

### I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS

#### A.  8 U.S.C. § 1254a(b)(5)(A) Expressly Bars Review of TPS Determinations

Congress has unambiguously committed to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination. 8 U.S.C. § 1254a(b)(5)(A). The Secretary's determinations vacating the prior TPS extension for Venezuela and partially vacating the prior TPS extension for Haiti are undeniably determinations

*with respect to* the extension of TPS designations. These determinations are thus shielded from this Court's review. *See* ECF No. 43 at 8-10.

Plaintiffs try to resist this conclusion by pointing out that the Northern District of California recently concluded that the jurisdictional bar forecloses judicial review only to the extent it involves "inquiring into the underlying considerations and reasoning employed by the Secretary in reaching her country-specific TPS determinations." ECF No. 47, 8-9. But the Supreme Court stayed that decision pending the outcome of the Government's appeal. *See Noem v. National TPS Alliance*, No. 24A1059. In rejecting the decision on which Plaintiffs rely, the Supreme Court indicated that the Government's argument that courts lack jurisdiction to review a vacatur is likely to succeed.

In any event, Plaintiffs' claims would fail even on their own theory because they do not press a collateral challenge to the Secretary's processes or legal authority. Although Plaintiffs assert that they are not challenging the Secretary's determinations regarding the TPS determinations for Venezuela and Haiti, *see* ECF No. 47, 9, their Complaint plainly reveals otherwise. *See* Compl. ¶¶ 5, 101-05, 108, 114-15, 139, 155, 169.

Plaintiffs also argue that the Government has conceded, in a hearing before another court, that the TPS statute does not foreclose review of all of their claims. *See* ECF No. 47 at 8. That argument is a non-starter: "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Regardless, the Government conceded no such thing. To the contrary, the Government argued there, as here, that the Secretary's Vacatur of the 2025 TPS Extension for Venezuela is "swept up under § 1254a(b)(5)(A)['s]" language barring judicial review of "any determination" and thus eliminates jurisdiction. Hrg. Tr. 49-50, ECF 91, *Nat'l TPS Alliance v. Noem*, No. 3:25-cv-01766.

The Government simply recognized the principle that courts "have an independent obligation to determine whether subject matter jurisdiction exists[.]" *Arbaugh*, 546 U.S. at 501; Hrg. Tr. at 48-51. And on that point, the statute could not be clearer: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. 1254a(b)(5)(A).

Finally, Plaintiffs rely on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492 (1991), to argue that litigants can raise "collateral challenges to unconstitutional practices and practices," 498 U.S. at 479, to the administration of the Special Agricultural Worker program turned on the different—and materially narrower—phrasing of the jurisdictional bar at issue there. That statute barred only judicial review of "*a determination* respecting *an application.*" *Ramos*, 975 F.3d at 889 (quoting former 8 U.S.C. § 1160(e)(1)) (emphasis added). The *McNary* statute thus foreclosed judicial review only with respect to individual applications, leaving open collateral challenges that did not center on an individual application. By contrast, the TPS statute speaks in programmatic terms to foreclose review of determinations with respect to TPS designation of an entire country, not just an individual application. *See* 8 U.S.C. § 1254(a)(b)(5)(A) ("There is no judicial review of any determination … with respect to the designation, or termination or extension of a designation, *of a foreign state* under this subsection" (emphasis added)). Recognizing this distinction, the Ninth Circuit compared § 1254(a)(b)(5)(A) to the statute analyzed in *McNary*, determining that *McNary* "sheds little light as to what precisely constitutes such an unreviewable TPS determination," and ultimately concluded that "the statute shields from judicial scrutiny" "specific TPS decisions and their underlying rationale[.]" *Ramos*, 975 F.3d at 889, 891. *McNary* is not informative here.

Because Congress precluded review of TPS determinations, and because Plaintiffs' claims go directly to that prohibited subject matter, the Court lacks authority to consider those claims.

### B. The APA Precludes Review of the TPS Determinations

The APA precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiffs' APA claim rests on the incorrect premise that the Secretary lacks inherent authority to reconsider a prior decision, as does their claim that the APA jurisdictional bar does not apply. ECF No. 47, 11. The APA's jurisdictional bar applies here because the Secretary's determination concerning the national interest is committed to her discretion, and courts lack meaningful standards for reviewing it. *Poursina v. U.S. Citizenship & Immigr. Servs.*, 936 F.3d 868, 871 (9th Cir. 2019) ("The invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard of review."). Because this determination calls upon the Secretary's unique expertise and lacks a meaningful standard for judicial review, it would be improper for this Court to review it. *Id*. at 874.

### C. 8 U.S.C. § 1252(f)(1) Bars Judicial Review by This Court

Plaintiffs' arguments regarding whether 8 U.S.C. § 1252(f)(1) applies in this matter are unavailing. ECF No. 47, 12-17. As Defendants have explained, § 1252(f)(1) bars lower courts from entering an order that "enjoin[s] or restrain[s]" federal officials from enforcing, implementing, or otherwise carrying out "the specified statutory provisions." ECF No. 43, 11-13; *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Here, Plaintiffs seek an order to "set aside" the Secretary's determinations. *See* Compl. ¶¶ 9, 150; ECF No. 47, 12, 14, 16. But, again, such an order would "enjoin or restrain" the Secretary and DHS from implementing the TPS provisions laid out in § 1254a. Plaintiffs can call it what they wish, but at base, they seek exactly the restraint that § 1252(f)(1) prohibits.

Plaintiffs incorrectly rely on *Jennings v. Rodriguez* to argue that § 1252(f)(1) does not apply to their arguments, which they say merely seek "to have the Government *follow* the provisions of the law." ECF No. 47, 12-13 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).  But every plaintiff would say the same thing about his claims; if that were all it takes to evade § 1252(f)(1), the statute would be meaningless. That is why the Supreme Court has squarely rejected this attempt to eviscerate § 1252(f)(1). *Garland v. Aleman Gonzalez*, 596 U.S. 543, 552-54 (2022) (rejecting argument that § 1252(f)(1) bars only "class-wide injunctions that prohibit the Government from doing what the statute allows or commands").

## II.    PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED AN APA VIOLATION

Even if this Court finds it has jurisdiction, the Secretary's decisions were lawful and consistent with the procedures set forth under 8 U.S.C. § 1254a. Plaintiffs have failed to state a claim and this matter should be dismissed.

### A.  The Secretary's Determinations Were Not Contrary to the Law.

Nothing in the TPS statute forecloses the Secretary's inherent authority to reconsider a prior TPS determination, particularly an erroneous one. In fact, the Secretary has discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C). Secretary Noem is not the first official to recognize as much. In fact, former Secretary Alejandro Mayorkas reconsidered an earlier TPS determination during his tenure. *See Consideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Extension for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023) ("2023 Mayorkas Reconsideration"). The TPS statute imposes no deadlines or timeframes for modifying or vacating a deficient extension. *See* 8 U.S.C. § 1254a(b).

Here, the Secretary permissibly exercised her reconsideration authority, acting promptly once she took office to reconsider and vacate Secretary Mayorkas's prior TPS decisions. The

Secretary's determination was necessary because former Secretary Mayorkas's prior decision concerning Haiti lacked explanation as to why the 18-month extension period was chosen, failed to consider how the decision may impact the national interest, and relied on dated country conditions information. *Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti*, 90 Fed. Reg, 10,511, 10,513 (Feb. 24, 2025) ("Haiti Partial Vacatur"). The prior decision for Venezuela "did not acknowledge the novelty of its approach or explain how it is consistent with the TPS statute." *Vacatur of 2025 Temporary Protected Status Decision for Venezuela*, 90 Fed. Reg. 8,806, 8,809 (Feb. 3, 2025) ("Venezuela Vacatur"). An administrative agency has inherent or statutorily implicit authority to "reconsider and change a decision if it does so within a reasonable period of time" if Congress has not foreclosed this authority by requiring other procedures. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977); *see, e.g.*, *Kelch v. Dir., Nev. Dep't of Prisons*, 10 F.3d 684, 687 (9th Cir. 1993) (applying Nevada law holding "administrative agencies have an implicit authority to reconsider their own decision, since the power to decide in the first instance carries with it the power to reconsider"); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007). Because the Secretary acted within her implicit authority, Plaintiffs' reliance on *Jennings* is inapplicable. This Court cannot grant Plaintiffs the relief they seek, and these claims should be dismissed.

Plaintiffs argument that the Secretary lacks authority to reconsider past determinations fails. ECF No. 47, 19-20. As just explained, an administrative agency has inherent authority to reconsider and change a decision within a reasonable period if it has not been Congressionally foreclosed through other procedures. *Mazaleski*, 562 F.2d at 720; *see, e.g.*, *Kelch*, 10 F.3d at 687.

Contrary to Plaintiffs' assertion, ECF No. 47, 20-21, the cases relied upon in the Federal Register Notice support the conclusion that agencies do indeed hold such authority. *Ivy Sports Medicine*, 767 F.3d at 86 (recognizing that agencies are assumed to possess some inherent authority). In *Ivy Sports Medicine*, the court declined to find inherent authority where the Food and Drug Administration had a statutory mechanism in place to correct misclassified drugs or medical devices. *Id.* at 87. By contrast, here, the TPS statute lacks an explicit procedural mechanism to correct erroneous decision-making, underscoring that the Secretary's exercise of inherent authority was proper. Plaintiffs' reading of the situation would render a Secretary unable to correct any mistaken or unlawful action once the action has been announced, leaving the agency bound to that action unless a court decides to order the agency to correct that action.

Plaintiffs' assertion that the lack of authority is underscored by "[t]he fact that DHS has never before in the 35-year history of the TPS statute rescinded a TPS extension" is misleading, as former Secretary Mayorkas exercised the same inherent authority to reconsider a prior *termination* decision in 2023. *2023 Mayorkas Reconsideration*, 88 Fed. Reg. at 40,285 ("An agency has inherent (that is, statutorily implicit) authority to revisit its prior decisions unless Congress has expressly limited that authority. The TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination."). Plaintiffs do not attempt to explain how Secretary Mayorkas could have had authority to rescind a TPS termination while Secretary Noem supposedly lacks authority to vacate a TPS extension. ECF. No. 47, 22-23.

Plaintiffs also suggest that the Secretary "did not claim any error" in her predecessor's decisions. ECF No. 47, 22. To the contrary, after carefully reviewing former Secretary Mayorkas's decisions, Secretary Noem found that the decision for Venezuela "did not acknowledge the novelty

of its approach or explain how it is consistent with the TPS statute." *Venezuela Vacatur*, 90 Fed. Reg. at 8,809. "Given these deficiencies," Secretary Noem determined that a vacatur is warranted to "untangle the confusion," within her predecessor's determination, which consolidated filing processes and allowed all eligible TPS beneficiaries to obtain TPS through the same extension date of October 2, 2026, regardless of whether they are under the 2023 designation or the 2021 designation. *Id.* at 5,961. Secretary Noem found that the prior decision for Haiti lacked explanation as to why the 18-month extension period was chosen, failed to consider how the decision may impact the national interest, and relied on dated country conditions information. *Haiti Partial Vacatur*, 90 Fed. Reg. at 10,513. Secretary Noem determined that vacating the prior decision and shortening the TPS period "will allow for a fresh review of country conditions in Haiti and of whether such conditions remain both 'extraordinary' and 'temporary,' whether Haitian may return in safety, and whether it is contrary to the U.S. national interest to continue to permit the Haitian nationals to remain temporarily in the United States." *Id.* at 10,514. Far from Plaintiffs' claim that the decisions lacked a claim of error, ECF No. 47, 22, the Secretary's explanations in each vacatur determination clearly show otherwise.

Plaintiffs further contend that the Venezuela Vacatur unlawfully prematurely terminated TPS because "by law, the Secretary may not terminate TPS protection until that period expires." ECF No. 47, 23. This argument relies on Plaintiffs' mischaracterization of the vacatur as a "termination." But the Venezuela Vacatur restored the status quo preceding former Secretary Mayorkas' decisions, restoring effect to the statutory deadline for the 2023 Venezuela TPS designation and requiring the Secretary to determine whether to extend or terminate the TPS designation by February 1, 2025. The Secretary timely did so, consistent with the requirements under 8 U.S.C. § 1254a(b)(3). *See Venezuela Termination*, 90 Fed. Reg. at 9,040-41. Similarly, the

partial vacatur for Haiti was not a termination, but instead merely shortened the TPS period. *Haiti Partial Vacatur*, 90 Fed. Reg at 10,511.

In making this argument, Plaintiffs claim that termination of a TPS designation can take effect only after "the expiration of the most recent previous extension," which Plaintiffs say is October 2, 2026, for Venezuela. *Id*. But because the 2025 Extension was vacated by Secretary Noem's Vacatur before it went into effect, the status quo preceding that decision was restored, and the "expiration of the most recent previous extension" for the 2023 Venezuela TPS designation was April 2, 2025. *See Venezuela*, 90 Fed. Reg. at 8,807. The termination, which was published on February 5, 2025, became effective on April 7, 2025. *See Venezuela Termination*, 90 Fed. Reg. at 9,040-41. The termination thus went into effect after the "expiration of the most recent previous extension," and it was lawful under the statute. Plaintiffs' claims challenging the termination of TPS for Venezuela fail.

Finally, in challenging the Secretary's termination of TPS for Venezuela as improper, Plaintiffs overlook the plain text in 8 U.S.C. § 1254a(b)(1)(C), which permits TPS designation if the Secretary "finds that there exist extraordinary and temporary conditions in the foreign state… *unless* [she] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." Consistent with this statutory provision, Secretary Noem reviewed Venezuela's TPS designation and, after consulting with the appropriate Government agencies, determined that Venezuela no longer continues to meet the conditions for designation. *See* 8 U.S.C. § 1254a(b)(1)(C), (b)(3)(A)-(B); *Venezuela Termination*, 90 Fed. Reg. at 9,042.

In this notice, Secretary Noem identified that there were "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely

returned to their home country," and that these findings were based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State. *Id*. But she emphasized that, "even assuming the relevant conditions remain both 'extraordinary and temporary,'" termination of the 2023 TPS designation for Venezuela is required because "it is contrary to the national interest to permit Venezuelan nationals to remain temporarily in the United States," in accordance with her statutory authority. *Id*. As a result, the Secretary reasonably determined that Venezuela "no longer continues to meet the conditions for designation." *Id*. Accordingly, Plaintiffs' claims challenging the termination of TPS for Venezuela on this basis fail.

## B. The Secretary's Termination and Vacatur Were Not Arbitrary and Capricious.

Plaintiffs focus on the timeframe in which these determinations were made to suggest that meaningful consultation and review was not possible. ECF No. 47, 24. As discussed *infra*, the Secretary complied with the statutorily required procedures, including review of country conditions after consulting with the appropriate government agencies, and issued reasoned determinations in accordance with the time limitations. Therefore, these claims should be dismissed. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action should be set aside only "if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise"); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (emphasizing that "a court is not to substitute its judgment for that of the agency," and that even agency determinations "of less than ideal clarity" are to be upheld "if the agency's path may reasonably be discerned" (citations and quotation marks omitted)).

Finally, as explained below, Plaintiffs have not adequately alleged that the Secretary's determinations were "pretextual and policy driven." ECF No. 47, 24; *see infra*.

## III.    PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS

### A.    *Trump v. Hawaii* Provides the Appropriate Standard of Review.

As explained in Defendant's motion to dismiss, ECF No. 43, rational basis review governs Equal Protection Clause challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" *Trump v. Hawaii*, 585 U.S. 667, 704 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)). TPS determinations are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("However desirable worldwide amelioration of the lot of aliens, we think it is peculiarly a subject for international diplomacy. It should not be initiated by judicial decision . . . [and] must be entrusted to the branches of the Government in control of our international relations and treaty-making powers."). TPS determinations involve country-specific analysis that "implicate[s] relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. And Congress's decision to shield TPS determinations from judicial review reflects its judgment that this is an area in which the risk of erroneous or overreaching judicial action is greater than the risk of erroneous action by the Executive Branch. *See* 8 U.S.C. § 1254a(b)(5)(A).

Echoing the Northern District of California decision that the Supreme Court has stayed, Plaintiffs argue that *Hawaii*'s deferential standard of review does not apply to TPS holders because of their "long-established ties to the United States." ECF No. 47, 24. But *Hawaii* did not hint that

its standard only applies to foreign nationals residing outside the United States; instead, it emphasized that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703. In earlier constitutional challenges brought by aliens within the United States, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Galvan v. Press*, 347 U.S. 522, 531 (1954); *Shaughnessy*, 342 U.S. at 590. Plaintiffs further attempt to distance themselves from *Hawaii* by claiming that *Hawaii's* use of rational basis review was rooted in the President's invocation of "national security." ECF No. 47, 25. But in summarizing the "upshot of [its] cases" on the appropriate standard of review, *Hawaii*, 585 U.S. at 704, the Court quoted from *Mathews*, a case where the Court upheld the government's limitation on eligibility for federal medical insurance for resident aliens as not "wholly irrational," even in the absence of any stated national security concerns. *Mathews*, 426 U.S. at 83. Plaintiffs have therefore failed to present any convincing reason why rational basis review under *Hawaii* should not apply.[1]

### B. Plaintiffs Fail to State a Claim Even Under a Heightened Standard of Review.

Even under heightened scrutiny, Plaintiffs' equal protection claims fail because they have not alleged a plausible claim that a racially "discriminatory purpose was a motivating factor" in the Secretary's determinations. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Plaintiffs' constitutional claims rest entirely on an attempt to label as "discriminatory" various public statements by the Secretary and the President in which they advocated for a reduction of illegal immigration and crime. *See* Compl. ¶¶ 116-33. For example, Plaintiffs'

---

[1] Plaintiffs briefly argue they would prevail even if *Hawaii* applies because the Secretary lacked a facially legitimate reason for her actions. ECF No. 47, 25. That is plainly wrong, as the Federal Register notices recount at length the legitimate, nondiscriminatory reasons for the actions.

opposition criticizes reliance on gang violence or the designation of the Venezuelan gang, Tren de Aragua ("TdA"), as a terrorist organization as a basis for decision-making. ECF No. 47, 26. But concern about gang violence and the designation of a known terrorist organization reflects the legitimate "national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" that informed the Secretary's determinations. *See*, *e.g.*, *Venezuela Termination*, 90 Fed. Reg. at 9042 (recognizing that "among the Venezuelan nationals who have crossed into the United States are members of . . . Tren de Aragua").

Plaintiffs try to rehabilitate their allegations by claiming that they focus on statements "in the critical months preceding Defendant Noem's decisions," ECF No. 47, 26, but their complaint plainly focuses virtually exclusively on statements dating back to "the first Trump Administration," Compl. ¶ 117, and statements during "the 2024 campaign," *id.* ¶¶ 118-129, 132-133. Plaintiffs allege no post-campaign statements related to Haiti, and just one supposedly related to Venezuela. *See* Compl. ¶¶ 130-131. Plaintiffs' attempt to rely on statements made by President Trump on the campaign trail should be also rejected for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements – remote in time and made in unrelated contexts – do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (citing *Arlington Heights*, 429 U.S. at 268). Also, although Plaintiffs cite statements supposedly suggesting discriminatory animus on the part of the President and members of his Administration, these statements do not speak to the reasons behind the TPS decisions at issue. Rather, they reflect the Executive's general view that the prior Administration's border policies encouraged a mass illegal influx of aliens and created an unsustainable situation.

Plaintiffs also suggest a preordained outcome at the behest of President Trump, ECF No.

47, 28, it is "hardly improper" for the Secretary to consider the Administration's immigration policy prerogatives. *Dep't of Commerce v. New York*, 588 U.S. 752, 78 (2019). To the contrary: "It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897-98. That simply reflects our democratic form of government. As the Supreme Court has explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by Administrative priorities," as such decisions are properly and "routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others)." *Dep't of Commerce*, 588 U.S. at 782. Plaintiffs' reasoning would unjustifiably vitiate virtually any immigration policy of this administration, leaving the Executive Branch hamstrung in its ability to respond to changing circumstances in this important area of policy and foreign relations.

Last, Plaintiffs argue that the Secretary did not invoke national security concerns in her decisions. ECF No. 47, 26. That is false. The challenged decisions discuss the Secretary's determination of the "national interest," which courts have repeatedly recognized "invokes broader economic and national-security considerations that are firmly committed to the discretion of the Executive Branch." *Flores v. Garland*, 72 F.4th 85, 90 (5th Cir. 2023) (quoting *Brasil v. Sec'y, Dep't of Homeland Sec.*, 28 F.4th 1189, 1193 (11th Cir. 2022); *Poursina*, 936 F.3d at 874 (same).

Plaintiffs cannot cherry-pick statements to suggest discriminatory motives for lawfully issued TPS determinations, and their equal protection claims must be dismissed.

## IV.    The Declaratory Judgment Act Does Not Provide Plaintiffs a Basis for Relief

Because Plaintiffs have not plausibly alleged a cognizable claim, they are not entitled to any remedy, and the Court should dismiss the Declaratory Judgment Act claim with Plaintiffs' substantive claims. *See Daylily Farms, Inc. v. Chao*, 357 F. Supp. 2d 356, 359 (D. Mass. 2005).

## CONCLUSION

The Court should dismiss Plaintiffs' complaint. Fed. R. Civ. P. 12(b)(1), (6). To the extent disparate country-specific claims may survive, they should be severed. Fed. R. Civ. P. 21.

Dated: June 10, 2025                    Respectfully Submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        SARAH L. VUONG
                                        Assistant Director

                                        WILLIAM H. WEILAND
                                        Senior Litigation Counsel

                                        LAUREN BRYANT
                                        CATHERINE ROSS
                                        ERIC SNYDERMAN
                                        ANNA L. DICHTER
                                        JEFFREY HARTMAN
                                        CARLTON F. SHEFFIELD
                                        Trial Attorneys

                                        /s/ Amanda B. Saylor
                                        AMANDA B. SAYLOR
                                        Trial Attorney
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation
                                        P.O. Box 868 Ben Franklin Station
                                        Washington, D.C. 20044
                                        (202) 598-6837
                                        Amanda.B.Saylor@usdoj.gov

                                        *Counsel for Defendants*