## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAITIAN-AMERICANS UNITED, *et al.*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>        *Defendants*. | Case No. 1:25-cv-10498 |

## BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS AND DISMISSAL

MATTHEW J. O'BRIEN
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mobrien@fairus.org
(202) 328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ........................................................ 1

SUMMARY OF ARGUMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    A.  Secretary Noem's vacaturs and terminations of TPS designations were
        exercises of presidential authority and are unreviewable under the APA ............... 4

    B.  This Court should harmonize the TPS statute with the President's inherent
        constitutional authority ............................................................................................. 6

CONCLUSION ......................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
333 U.S. 103 (1948) ........................................................................................... 3

*Crowell v. Benson*,
285 U.S. 22 (1932) .............................................................................................. 6

*Dalton v. Specter*,
511 U.S. 462 (1994) ......................................................................................... 4, 5

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
189 F. Supp. 3d 85 (D.D.C. 2016) ..................................................................... 5

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ............................................................................................ 6

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) ............................................................................................ 3

*Tulare Cty. v. Bush*,
185 F. Supp. 2d 18 (D.D.C. 2001) ...................................................................... 5

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) ............................................................................................ 3

*United States v. Hansen*,
599 U.S. 762 (2023) ............................................................................................ 6

## STATUTES

8 U.S.C. § 1182(f) .................................................................................................... 3

8 U.S.C. § 1254a ...................................................................................................... 4

## MISCELLANEOUS

Executive Order 14159, "Protecting the American People Against Invasion,"
90 Fed. Reg. 8443 (Jan. 29, 2025) ..................................................................... 4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. In short, FAIR seeks to protect all Americans against the substantial harms of mass migration by attaining strongly-enforced, patriotic immigration reform. To that end, FAIR has been involved in more 100 legal cases since 1980, either as a party or as *amicus curiae*, in which it has consistently defended American interests against illegal immigration into the United States.

The decision in this case will likely have a substantial impact on the tools available to dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the executive branch's authority to address the current illegal alien crisis within the confines of federal law.[1]

## SUMMARY OF ARGUMENT

Secretary Noem's vacatur of the extension of temporary protected status (TPS) for Venezuela (2025 Venezuela Vacatur), her partial vacatur of the Haiti's 2024 TPS

---

[1] No counsel for any party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

Extension (the 2025 Haiti Partial Vacatur), and her subsequent terminations of both Venezuela's 2023 TPS designation (2025 Venezuela Termination) and Haiti's 2024 TPS designation (2025 Haiti Termination) were exercises of inherent Executive power under Article II of the Constitution and were not dependent upon a delegation of power from Congress through the TPS statute. Indeed, her actions were directed by the President, and because Secretary Noem's actions were at the behest of the President, her actions are unreviewable under the Administrative Procedure Act (APA).

Furthermore, Plaintiffs' reading of the statute introduces a conflict between it and the President's inherent authority. Plaintiffs urge the Court to read the TPS statute to preclude the Executive Branch from reconsidering its prior determinations, but such a reading intrudes on the President's inherent and independent authority to oversee foreign affairs and immigration policy. And, as the government shows, another reading of the statute is, at the very least, permissible, according to which the statute does permit reconsideration of prior agency decisions. Accordingly, to avoid constitutional conflict, this Court should harmonize the TPS statute with Secretary Noem's exercise of inherent Executive authority by adopting the government's interpretation.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see

fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). It is well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added). Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). Granted the president's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

By reason of this power, as explained below, Plaintiffs fail to state a claim on the merits, and this Court accordingly should grant Defendants' motion to dismiss.

### A.    Secretary Noem's vacaturs and terminations of TPS designations were exercises of presidential authority and are unreviewable under the APA

On January 20, 2025, President Trump directed Secretary Noem to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including "ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. 1254a), and that such designations are appropriately *limited in scope* and *made for only so long as may be necessary* to fulfill the textual requirements of that statute." Executive Order 14159 at § 16, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) (emphasis added).

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter*, 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, authority for Secretary Noem's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she issued the Vacatur and Termination decisions pursuant to his executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the

4

powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

Here, Secretary Noem acted at the direction of the President and implemented his executive order when she vacated extensions and subsequently terminated the TPS designations for both Venezuela and Haiti. Accordingly, the Court lacks jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the un-reviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

**B.** **This Court should harmonize the TPS statute with the President's inherent constitutional authority**

In any event, Plaintiffs' proposed reading of the TPS statute to preclude the Executive from reconsidering its prior determination, ECF Doc. 61 at 19-22,[2] intrudes on the President's inherent and independent authority to oversee foreign affairs and immigration policy. A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate TPS designations. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, the government has persuasively established one such permissible construction—that the TPS statute implicitly permits the Executive Branch to reconsider its prior determinations. *See* ECF Doc. 72 at 28-30. Thus, to avoid the conflict between the TPS statute and the Executive's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting reconsideration of prior agency decisions.

---

[2] Page citations to the record are to the District Court's ECF header pagination.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: September 10, 2025          Respectfully submitted,

/s/ Matthew J. O'Brien
MATTHEW J. O'BRIEN
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mobrien@fairus.org
(202) 328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform