BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
SHELBY WADE
DANIEL CAPPELLITTI
JEFFREY HARTMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAITIAN-AMERICANS UNITED, *et al.,* <br><br>     Plaintiffs, <br><br>       v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.,* <br><br>     Defendants. | Case No. 1:25-cv-10498 |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

ARGUMENT..................................................................................................…....................1

    I. The Court Lacks Subject-Matter Jurisdiction Over All of Plaintiffs' Claims..............….1

        A. 8 U.S.C. § 1254a(b)(5)(A) Expressly Excludes Review of TPS

        Determinations.......................................…....................................….......................1

        B. The APA Precludes Review of the TPS Determinations That Rest on a National

        Interest Determination...................................................….................…......…..4

        C. 8 U.S.C. § 1252(f)(1) Bars The Relief Plaintiffs Seek......................….......…..5

    II. Plaintiffs Have Not Sufficiently Alleged an APA Violation.........................…...........6

        A. The Secretary's Vacatur Determinations Were Not Contrary to the

        Law.........................................................................................................7

        B. The Vacatur and Termination Determinations Were Not Arbitrary and

        Capricious.............................................................................................…....…....10

    III. Plaintiffs' Equal Protection Claim Fails.........................................…....…..........12

        A. *Trump v. Hawaii* Provides the Appropriate Standard of Review..................…..12

        B. Plaintiffs Fail to State a Claim Even Under a Heightened Standard of

        Review.......................................…..........................................................14

    IV. The Declaratory Judgment Act Does Not Provide Plaintiffs a Basis for

    Relief...............................................................................................................15

CONCLUSION..................................................................................................…....16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amgen, Inc. v. Smith,*

    357 F.3d 103 (D.C. Cir. 2004) ................................................................. 2

*Casa de Maryland, Inc. v. Trump,*

    *355 F. Supp. 3d 307 (D. Md. 2018)* ........................................................ 4

*Centro Presente v. U.S. Dep't of Homeland Sec.,*

    *332 F. Supp. 3d 393 (D.Mass.2018)* ....................................................... 4

*Comm'n v. Texas,*

    605 U.S. 665 (2025) ................................................................................ 3

*Craker v. DEA,*

    714 F.3d 17 (1st Cir. 2013) .................................................................... 10

*Daylily Farms, Inc. v. Chao,*

    357 F. Supp. 2d 356 (D. Mass. 2005) ..................................................... 15

*Dep't of Commerce v. New York,*

    588 U.S. 752 (2019) ............................................................................... 12

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*

    *591 U.S. 1 (2020)* ................................................................................. 15

*Garland v. Aleman Gonzalez,*

    596 U.S. 543 (2022) ................................................................................ 5

*Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, et al., v. Excelsior Foundry*

    *Co., 56 F.3d 844, 847 (7th Cir. 1995)* .................................................... 8

*Gun South, Inc. v. Brady,*

    877 F.2d 858 (11th Cir. 1989) ................................................................. 8

ii

*Haitian Evangelical Clergy Ass'n v. Trump*,

  2025 WL 1808743 (E.D.N.Y. July 1, 2025) ............................................................ 3

*Harisiades v. Shaughnessy*,

  342 U.S. 580 (1952) ................................................................................................. 13

*Holder v. Humanitarian Law Project*,

  561 U.S. 1 (2010) .................................................................................................... 13

*Hollingsworth v. Perry*,

  558 U.S. 183 (2010) ................................................................................................. 2

*Ivy Sports Medicine, LLC v. Burwell*,

  767 F.3d 81 (D.C. Cir. 2014) ................................................................................... 8

*Macktal v. Chao*,

  286 F.3d 822 (5th Cir. 2002) ................................................................................... 8

*Mathews v. Diaz*,

  426 U.S. 67 (1976) ............................................................................................. 13, 14

*Mazaleski v. Treusdell*,

  562 F.2d 701 (D.C. Cir. 1977) ................................................................................. 8

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,

  606 U.S. 146 (2025) ................................................................................................. 3

*Nat'l TPS All. v. Noem*,

  773 F. Supp. 3d 807 (N.D. Cal. 2025) .................................................................... 3

*Nat'l TPS All. v. Noem*,

  2025 WL 2487771 (9th Cir. 2025) ....................................................................... 3, 7

*Nat'l TPS All. v. Noem*,

  2025 WL 2578045 (N.D. Cal. 2025) ........................................................................ 4

*Noem v. Nat'l TPS Alliance*,

  145 S. Ct. 2728 (2025) ............................................................................................. 2

*Noem v. Nat'l TPS Alliance*,

2025 WL 2812732 (2025)................................................................................................2

*Patel v. Garland*, .......................................................................................................... 3

596 U.S. 328, 346-47 (2022).

*President and Fellows of Harvard College v. U.S. Dept. of Health and Human Servs.*,

2025 WL 2528380 (D. Mass., Sept. 3, 2025) ............................................................ 3

*Ramos v. Neilsen*,

321 F. Supp. 3d 1083 (N.D. Cal. 2018) ................................................................... 4

*Sig Sauer, Inc. v. Brandon*,

826 F.3d 598 (1st Cir. 2016) ................................................................................... 10

*Trump v. Hawaii*,

585 U.S. 667 (2018)......................................................................................... 12, 13

*United States v. Texas*,

599 U.S. 670 (2023)............................................................................................ 3, 6

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,

429 U.S. 252 (1977)......................................................................................... 14, 15

*Yale New Haven Hosp. v. Becerra*,

56 F.4th 9 (2d Cir. 2022)......................................................................................... 2

## STATUTES

## Immigration and Nationality Act of 1952:

5 U.S.C. § 701(a)(2)............................................................................................... 4

8 U.S.C. § 1252(a)(2)(D)........................................................................................ 4

8 U.S.C. § 1252(f)(1) ......................................................................................... 1, 5, 6

8 U.S.C. § 1254a .......................................................................................... 1, 3, 5, 10

8 U.S.C. § 1254a(b)(3)............................................................................................ 1, 9

8 U.S.C. § 1254a(b)(5)(A) ................................................................................. *passim*

8 U.S.C. §1254a(b)(1)(C) ................................................................................5,10,11,12

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ................................................................................. 16

Fed. R. Civ. P. 12(b)(6) ................................................................................. 16

## FEDERAL REGISTER

88 Fed. Reg. 40,282 (June 21, 2023) ............................................................. 7, 8, 9, 10

90 Fed. Reg. 8,806 (Feb. 3, 2025)..................................................................5, 7, 9

90 Fed. Reg. 9,040 (Feb. 5, 2025) ...........................................................…....5, 9

90 Fed. Reg  10,511 (Feb. 24, 2025)...............................................…...............5, 14

90 Fed. Reg. 28,762 (July 1, 2025)................................................................5, 9, 11, 15

## INTRODUCTION

Plaintiff's response fails to overcome the issues in this matter. As Defendant's set forth in their Motion to Dismiss, ECF No. 72, Congress has precluded judicial review over the Secretary's TPS determinations. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Additionally, 8 U.S.C. § 1252(f)(1) bars this Court from "enjoin[ing] or restrain[ing]" the Secretary's authority to designate, extend, or terminate TPS under 8 U.S.C. § 1254a(b). Moreover, even if judicial review were available, Plaintiffs have not plausibly alleged that the Secretary's reasoned decision-making, pursuant to a broad delegation of authority by Congress, was "contrary to law" or "arbitrary and capricious." Lastly, Plaintiffs have not plausibly alleged that the Secretary's actions violate their rights to equal protection or substantive due process. For these foregoing reasons, this Court should dismiss Plaintiff's First Amended Complaint.

## ARGUMENT

## I.    The Court Lacks Subject-Matter Jurisdiction Over All of Plaintiffs' Claims.

### A.  8 U.S.C. § 1254a(b)(5)(A) Expressly Excludes Review of TPS Determinations.

The TPS statute unambiguously precludes review here in the plainest possible language: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The Secretary's determinations vacating the prior TPS extension for Venezuela and partially vacating the prior TPS extension for Haiti are undeniably determinations "with respect to" an extension of TPS designations. These determinations, like the Secretary's determination terminating TPS for Venezuela and Haiti, are thus shielded from this Court's review. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added).

1

At minimum, § 1254a(b)(5)(A) bars review of Plaintiffs' arbitrary-and-capricious claims. "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 20 (2d Cir. 2022) (quoting *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004)).  In related litigation, the Supreme Court has granted the government's stay applications that relied on this same judicial-review argument. After a district court held that it could review claims that the Secretary acted arbitrary and capriciously in terminating TPS for Venezuela, the government argued to the Supreme Court that § 1254a(b)(5)(A) precludes judicial review of those arbitrary-and-capricious claims. *Noem v. Nat'l TPS All.*, No. 25A326, Appl. 19; *Noem v. Nat'l TPS All.*, No. 24A1059, Appl. 15-20. The Supreme Court twice intervened, staying both the district court's preliminary order and its final judgment. *See Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025); *Noem v. Nat'l TPS Alliance*, — S. Ct. —, 2025 WL 2812732, *1 (Oct. 3, 2025). To grant that relief, the Supreme Court necessarily determined that the government is likely to succeed on the merits of its reviewability argument. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

Plaintiffs admit that the TPS statute bars judicial review of determinations made under the statute. ECF No. 13, however, in an attempt to circumvent that bar, Plaintiffs reframe their challenges as mere "collateral challenges" to the Secretary's process or legal authority. ECF No. 81 at 12-16. The statute has no "collateral challenge" exception; it bars *all* judicial review of *any* determination with respect to TPS designations, extensions, and terminations. Even if the TPS statute permitted judicial review of collateral challenges, Plaintiffs' claims would not fit within that exception because they "impinge on" the "ultimate substantive outcome" of the Secretary's determinations. ECF No. 81 at 12. Plaintiffs ask the Court to set aside the Secretary's actions and

hold that she lacked authority to take the challenged actions, which obviously "impinges on" those actions themselves. *See* FAC ¶ 101-105, 109, 113-14, 141, 155, 169. Plaintiffs' animus claims even more obviously take issue with the substance of the Secretary's decisions and the outcomes she reached. This is just the sort of review § 1254a forbids, even on Plaintiffs' cramped reading. The Court should reject Plaintiffs' attempt to read in an atextual exception.[1, 2]

Indeed, the Supreme Court has "strictly limited" ultra vires review to "avoid creating an easy end-run around the limitations of ... judicial-review statutes." *President and Fellows of Harvard College v. U.S. Dept. of Health and Human Servs.*, 2025 WL 2528380 (D. Mass., Sept. 3, 2025) (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680 (2025)). If a litigant could sidestep § 1254a(b)(5)(A) by simply characterizing its TPS claims as an *ultra vires* challenge, as Plaintiffs attempt to do (ECF No. 81 at 13), there would be little left of Congress's clear, broad bar on judicial review. Plaintiffs should not be allowed to recast their claims as collateral while seeking the same underlying relief so as to benefit from the APA's substantive provisions while avoiding its strictures.

---

[1] Plaintiffs argue that the presumption of judicial review counsels a narrow reading of the judicial-review bar. ECF No. 81 at 8-9. Not so. The presumption is "only a default" rule, and Congress can "easily" preclude judicial review when it "wants to." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 157 (2025). Here, Congress has done so in unmistakable terms. The statute plainly rebuts the presumption of judicial review by providing that "[t]here is *no judicial review* of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The presumption of judicial review does not support an atextual reading of this clear statement precluding judicial review. *Patel v. Garland*, 596 U.S. 328, 346-47 (2022).

[2] Plaintiffs cite cases reflecting the ongoing litigation regarding the Secretary's TPS determinations as dispositive on the questions before this Court, without also acknowledging that those very same rulings remain under appellate review. ECF No. 81 (*cf. Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 866-68 (N.D. Cal. 2025); *Nat'l TPS All. v. Noem*, 2025 WL 2487771 (9th Cir. Aug. 29, 2025); *Haitian Evangelical Clergy Ass'n v. Trump*, 2025 WL 1808743 (E.D.N.Y. July 1, 2025)).

Plaintiffs also briefly argue that the statute does not bar any constitutional claims. ECF No. 81 at 11. The plain text bars "judicial review" of any kind—whether factual, statutory, constitutional, or otherwise. Creating an atextual exception for constitutional claims would clash with other portions of the INA where Congress expressly *did* create an exception to judicial-review bars that would otherwise foreclose constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D) (permitting "review of constitutional claims or questions of law," when raised in "a petition for review," that would otherwise be foreclosed by certain judicial-review bars)). Thus, because Congress precluded review of TPS determinations, and because Plaintiffs' claims go directly to that prohibited subject matter, the Court lacks authority to consider those claims and this Court lacks subject matter jurisdiction.

### B.   The APA Precludes Review of the TPS Determinations That Rest on a National Interest Determination.

The APA precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That jurisdictional bar applies here because courts cannot second-guess the determination of the Secretary of Homeland Security regarding the national interest. The cases cited by Plaintiff are inapposite and do not warrant a contrary conclusion. ECF No. 81 at 16. *Casa de Maryland* and *Ramos* did not discuss national interest at all. 355 F. Supp. 3d at 327-28; *Ramos*, 321 F. Supp. 3d at 1108-09. *Centro Presente* concluded that the Secretary had not made a national interest determination. 332 F. Supp. 3d at 416. And *HECA* and *National TPS Alliance* similarly concluded that the national interest determination did not affect the issues the court was reviewing. *HECA*, 2025 WL 1808743, at *5-7; *Nat'l TPS All.*, 2025 WL 2578045 at *21. Plaintiffs cite no case in which a court concluded that it could review a determination of the national interest or an action taken based on such a determination.

Here, the Secretary's actions depend on her determination of the national interest because the statute requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." § 1254a(b)(1)(C) Consistent with this statutory authority, the Secretary reconsidered the TPS extensions for Venezuela and Haiti and terminated those designations after finding those countries no longer met the conditions for TPS designation. *See Vacatur of 2025 [TPS] Decision for Venezuela*, 90 Fed. Reg. 8,806, 8,809 (Feb. 3, 2025) ("Venezuela Vacatur"); *Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg 10,511 (Feb.24, 2025) ("Haiti Partial Vacatur"); *Termination of the October 3, 2023 Designation of Venezuela for [TPS],* 90 Fed. Reg. 9,040, 9041 (Feb. 5, 2025) (Venezuela Termination); *Termination of the Designation of Haiti for [TPS]*, 90 Fed. Reg. 28,762 (July 1, 2025).

### C.  8 U.S.C. § 1252(f)(1) Bars The Relief Plaintiffs Seek

Section 1252(f)(1) bars lower courts from entering an order that "enjoin[s] or restrain[s]" federal officials from enforcing, implementing, or otherwise carrying out "the specified statutory provisions." ECF No. 72, 15-17; *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Here, because Plaintiffs seek an order to "enjoin[] and set aside" the Secretary's determination, thereby restraining the Secretary and DHS from implementing the TPS provisions laid out in § 1254a, *See* FAC ¶ 9; ECF No. 81 at 17, this Court cannot grant Plaintiffs the relief they seek under 8 U.S.C. § 1252(f)(1).

Plaintiffs' distinction between a vacatur under the APA and an injunction is irrelevant. ECF No. 81 at 17-18.[3] It doesn't matter if a vacatur is an injunction (or practically equivalent to an

---

[3] Plaintiffs' attempt to criticize the government for pressing arguments here that it has made elsewhere is meritless. *See, e.g.*, ECF No. 81 at 18. The contrary decisions that Plaintiffs cite are

injunction), because § 1252(f)(1) forbids not just orders that "enjoin" the Executive Branch, but also non-injunctive orders that otherwise "restrain" the Executive Branch. 8 U.S.C. § 1252(f)(1); *see United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). An order to "[s]et aside" and "[p]ostpone or stay" the TPS terminations "from taking effect or being put into effect," FAC ¶¶ 153, 169, 175, would "restrain[]" federal officials because it would "check," "hold back," or "prevent" the challenged actions. *Aleman Gonzalez*, 596 U.S. at 549. The remedies Plaintiffs seek—vacatur and injunction alike— are equally prohibited by § 1252(f)(1).

Supreme Court precedent squarely forecloses Plaintiffs' argument that § 1252(f)(1) does not apply to their challenge to "agency action that is outside the scope of the TPS statute." ECF No. 81 at 17. In *Aleman Gonzalez*, the challengers similarly argued that § 1252(f)(1) permits relief that merely prevents the government from improperly or unlawfully operating the covered statutes. 596 U.S. at 552. Plaintiffs' argument that § 1252(f)(1) does not apply to constitutional claims is likewise meritless. Section 1252(f)(1) does not raise constitutional concerns by limiting—but not foreclosing—the avenues for review of constitutional claims regarding covered provisions. Plaintiffs cite no basis for constitutional doubt that Congress can limit classwide remedies even for constitutional claims, and the Supreme Court has expressly contemplated that § 1252(f)(1) limits remedies for constitutional claims without apparent constitutional concern. *See Aleman Gonzalez*, 596 U.S. 553-54.

## II.    Plaintiffs Have Not Sufficiently Alleged an APA Violation.

---

from courts that do not bind this Court, and they are presently on appeal. The government is entitled to argue that the decisions are erroneous and should not be persuasive to this Court.

### A.  The Secretary's Vacatur Determinations Were Not Contrary to the Law

Plaintiffs have also failed to state a claim that the Secretary lacked legal authority to vacate prior TPS designations for Venezuela and Haiti. FAC ¶¶ 163-166. Courts have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures.[4] Secretary Noem is not the first official to exercise this inherent authority. Indeed, former Secretary Mayorkas also reconsidered an earlier TPS determination during his tenure. *See Reconsideration and Recission of Termination of the Designation of El Salvador for [TPS]*; *Extension of the [TPS] Extension for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023*) (2023 Mayorkas Reconsideration)*. Plaintiffs ignore this past practice and identify nothing in the TPS statute that forecloses the Secretary's inherent authority to reconsider a prior TPS determination.

Here, Secretary Noem permissibly exercised her reconsideration authority, acting promptly once she took office to reconsider and vacate Secretary Mayorkas' prior TPS decisions. The Secretary explained that the "deficiencies" and "lack of clarity" arising from the former Secretary's 2025 Venezuela Extension, wherein he consolidated two overlapping TPS populations without any explanation, warranted a vacatur of that extension in order to "untangle the confusion and provide an opportunity for informed determinations regarding the TPS designation and clear guidance." *2025 Venezuela Vacatur*, 90 Fed. Reg. 8,807. In partially vacating the 2024 Haiti Extension, Secretary Noem noted that the prior extension failed to substantiate the 18-month extension period,

---

[4] Defendants again acknowledge the recent opinion from the Ninth Circuit on this topic, *Nat'l TPS Alliance v. Noem*, No. 25-2120, 2025 WL 2487771, at *13 (9th Cir. 2025). Defendants maintain that the Ninth Circuit erred, and the Secretary's determinations were consistent with her statutory authority based on the flawed decision-making that underscored her predecessor's TPS determinations with respect to the countries at issue.

failed to take the national interest into consideration, and relied on dated country information. *Haiti Partial Vacatur*, 90 Fed. Reg, 10,513. The Secretary partially vacated the extension by shortening the designation period by 12 months to "allow for a fresh review of country conditions in Haiti, … whether Haitians may return in safety, and whether it is contrary to the U.S. national interest to continue to permit the Haitian nationals to remain temporarily in the United States." *Id.* at 10,514.

Having outlined the bases for the vacaturs, which were decided "within a reasonable time" after taking office and have not been otherwise foreclosed by Congress, the Haiti Partial Vacatur and Venezuela Vacatur were both lawful and necessary exercises of the Secretary's inherent power. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977); *see, e.g.*, *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."); *see also Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) ); *cf. Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995) ("every administrative agency that exercises adjudicative authority[] has been understood to have . . . the inherent power to reconsider its decisions within a reasonable time"). Because the Secretary acted within her statutory authority, this Court cannot grant Plaintiffs the relief they seek, and these claims should be dismissed.

Plaintiffs' assertion "that DHS has never before in the 35-year history of the TPS statute rescinded a TPS extension," ECF No. 81 at 22, also mischaracterizes the statutory history—and fails to adequately acknowledge former Secretary Mayorkas' exercise of the same inherent authority to reconsider a prior *termination* decision in 2023. *2023 Mayorkas Reconsideration*, 88 Fed. Reg. at 40,285 ("An agency has inherent (that is, statutorily implicit) authority to revisit its

prior decisions unless Congress has expressly limited that authority. The TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination."). Secretary Mayorkas took that action because he concluded that certain conditions in El Salvador "were either insufficiently considered or not considered in the termination decision" and that "the termination decision failed to adequately assess conditions in El Salvador in 2018," not because there was pending litigation. 88 Fed. Reg. at 40,287. Even if there was an additional unstated aim of mooting ongoing litigation on these questions, that explains nothing. Simply put, it is not unprecedented for a Secretary to exercise his or her inherent authority – especially governing decisions not yet in effect.

Finally, Plaintiffs contend that Terminations were contrary to § 1254a(b)(3)(B) because "by law, the Secretary may not terminate TPS protection until that period expires." ECF No. 81 at 23. That argument falls with Plaintiffs' challenge to the vacaturs, which restored the status quo preceding former Secretary Mayorkas' decisions. By properly vacating the most recent extensions, the Secretary restored the initial deadlines for the 2023 Venezuela TPS designation and the 2024 Haiti TPS Designation. *See Venezuela Vacatur*, 90 Fed. Reg. 8,806; *Haiti Partial Vacatur*, 90 Fed. Reg at 10,511. As a result, Secretary Noem was required to determine whether to extend or terminate the Venezuela TPS designation by February 1, 2025, and the Haiti TPS designation by September 2, 2025. The Secretary timely did so, consistent with the requirements under 8 U.S.C. § 1254a(b)(3). *See Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5, 2025) (Venezuela Termination); *Haiti Termination*, 90 Fed. Reg. 28,762. The Terminations thus went into effect after the "expiration of the most recent previous extension" and were lawful under the statute.

**B. The Vacatur and Termination Determinations Were Not Arbitrary and Capricious.**

Plaintiffs have also failed to state a claim that the Secretary's determinations were arbitrary and capricious under the APA. FAC at ¶¶ 95-123. Neither of the vacatur determinations constitutes "an abrupt, unexplained departure from decades of consistent TPS policy," as Plaintiffs contend. ECF No. 81 at 24. Former Secretary Mayorkas exercised the same vacatur authority as recently as 2023, as already explained. *2023 Mayorkas Reconsideration*, 88 Fed. Reg. at 40,285. Secretary Noem provided sufficient reasoning underscoring the Venezuela Vacatur and Haiti Partial Vacatur and her determinations comported with authority granted by the statute. *See* 8 U.S.C. § 1254a.

Plaintiffs have also failed to state a specific claim that the Venezuela and Haiti termination decisions were arbitrary and capricious. FAC at ¶¶ 171-172, 177-178. Instead, they dispute the conclusion the Secretary made, noting their own selection of information regarding country conditions and the weight they would give them. *Id*. at ¶¶ 102-107. Those arguments fall squarely within the statutory language precluding courts from reviewing the substance of the Secretary's TPS determinations. And even outside the TPS context, the APA does not let Plaintiffs substitute their judgment for that of the Secretary, or to have this court direct the Secretary what weight she should give to the information available to her or the conclusions she should reach. *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016) (When reviewing an agency action, the Court "may not substitute [its] judgment for that of the agency, even if [it] disagree[s] with [the agency's] conclusions." (quoting *Craker v. DEA*, 714 F.3d 17, 26 (1st Cir. 2013)). And the Secretary's conclusion that extension of the TPS designations would be contrary to the national interest is an independently sufficient basis for the terminations. *See* 8 U.S.C. § 1254a(b)(1)(C); *Venezuela Termination*, 90 Fed. Reg. at 9,042; *Haiti Termination*, 90 Fed. Reg, 28,762. The Court cannot

review that conclusion, and it cannot set aside the terminations without setting aside that independently sufficient basis for them.

Regardless, the Secretary's reasoning withstands scrutiny. With respect to Venezuela, Secretary Noem identified "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," and stated that these findings were based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State. *Venezuela Termination*, 90 Fed. Reg. at 9,042. She also emphasized that, "even assuming the relevant conditions remain both 'extraordinary and temporary,'" termination of the 2023 TPS designation for Venezuela is required because "it is contrary to the national interest to permit Venezuelan nationals to remain temporarily in the United States," in accordance with her statutory authority under 8 U.S.C. § 1254a(b)(1)(C). *Id.* As a result of this finding, the Secretary reasonably determined that Venezuela "no longer continues to meet the conditions for designation." *Id.* Likewise, after consulting with the appropriate government agencies, Secretary Noem found that Haiti no longer continued to meet the conditions for the 2024 Designation—i.e., extraordinary and temporary conditions arising from a 2010 earthquake—and that it was "contrary to the national interest to permit the Haitian nationals to remain temporarily in the United States." *Haiti Termination*, 90 Fed. Reg. 28,762. In support of the latter finding, the Secretary cited recent reports highlighting a "pattern of large-scale irregular migration" from Haitian nationals that is "unsustainable" and inconsistent with the national interests. *Id.* at 28,763. She also highlighted "limited access to critical information" in a "high-volume border environment" that has hindered the ability of U.S. officials to reliably screen foreign nationals arriving in the United States. *Id.* at 28,762. The "inability to access reliable law enforcement …

11

information from the alien's country of origin" combined with the "serious threat posed by Haitian gangs" posed a direct impact to U.S. national security interests. *Id*. at 28,763.

In short, the Secretary properly invoked her discretionary authority under 8 U.S.C. § 1254a(b)(1)(C), which carves out a "national interest" consideration exception if the Secretary finds "that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." ECF No. 81 at 25. Accordingly, Plaintiffs have failed to state a claim that such consideration was arbitrary or capricious.

Finally, Plaintiffs focus on timing to suggest that meaningful consultation and review was impossible. ECF No. 81 at 26. As discussed *infra*, the Secretary complied with the statutorily required procedures, including review of country conditions after consulting with the appropriate government agencies, and issued reasoned determinations in accordance with the time limitations. There is no statutory requirement that the Secretary's decision take any particular length of time, and Plaintiffs' assertion that the decision was made too quickly amounts to a red herring predicated upon an unrealistic view of how government agencies work. Nothing precluded the agency from starting to review the designations for Venezuela or Haiti before Secretary Noem took office. Nor does the TPS statute place any limits on how quickly an agency may work to support the Secretary on a policy priority. *See Dep't of Commerce*, 588 U.S. at 78. Therefore, these claims should be dismissed.

## III.    Plaintiffs' Equal Protection Claim Fails

### A.    *Trump v. Hawaii* Provides the Appropriate Standard of Review

Rational basis review governs constitutional challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" *Trump*

*v. Hawaii*, 585 U.S. 667, 704 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)). TPS determinations are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("However desirable worldwide amelioration of the lot of aliens, we think it is peculiarly a subject for international diplomacy. It should not be initiated by judicial decision . . . [and] must be entrusted to the branches of the Government in control of our international relations and treaty-making powers."). TPS determinations involve country-specific analysis that "implicate[s] relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. These decisions reflect official pronouncements upon another nation's internal affairs and ability to govern, and they implicate complex foreign policy considerations and negotiations at the highest levels of government. And Congress's decision to shield TPS determinations from judicial review reflects its judgment that this is an area in which the risk of erroneous or overreaching judicial action is greater than the risk of erroneous action by the Executive Branch. *See* 8 U.S.C. § 1254a(b)(5)(A).

Plaintiffs argue that *Hawaii's* deferential standard of review does not apply to TPS holders because of their "long-established ties to the United States." ECF No. 81, 27. But *Hawaii* did not hint that its standard only applies to foreign nationals residing outside the United States; instead, it emphasized that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703. And in earlier constitutional challenges brought by aliens within the United States, the Supreme Court has repeatedly cautioned against applying a rigorous standard of review. *See Shaughnessy*, 342 U.S. at 590. Plaintiffs further attempt to distance themselves from

*Hawaii* by claiming that *Hawaii*'s use of rational basis review was rooted in the President's invocation of "national security." ECF No. 81, 27. But in summarizing the "upshot of [its] cases" on the appropriate standard of review, *Hawaii*, 585 U.S. at 704, the Court quoted from *Mathews*, a case where the Court upheld the government's limitation on eligibility for federal medical insurance for resident aliens as not "wholly irrational," even in the absence of any stated national security concerns. *Mathews*, 426 U.S. at 83. Plaintiffs have therefore failed to present any convincing reason why rational basis review under Hawaii should not apply.

### B.  Plaintiffs Fail to State a Claim Even Under a Heightened Standard of Review

Even under heightened scrutiny, Plaintiffs' equal protection claims fail because they have not alleged a plausible claim that a racially "discriminatory purpose was a motivating factor" in the Secretary's determinations. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Plaintiffs' claims rest entirely on an attempt to label as "discriminatory" various public statements by the Secretary and the President in which they advocated for a reduction of illegal immigration and crime. *See* FAC ¶¶ 124-41. The statements and sources highlighted by Plaintiffs in the operative complaint reflect that their racial animus claims are entirely without foundation. ECF No. 81 at 31. Rather, the Secretary's statements were plainly non-discriminatory in nature and simply mirror the legitimate "national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" that informed the Secretary's vacatur and termination determinations. *See Venezuela Termination*, 90 Fed. Reg. at 9043; *see id.,* at 9042 (recognizing that "among the Venezuelan nationals who have crossed into the United States are members of…[designated Foreign Terrorist Organization] Tren de Aragua"); *Haiti Partial Vacatur*, 90 Fed. Reg. 10,513 (the "notice is bereft of any justification of why permitting the ever-

increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain temporarily in the United States is not contrary to the U.S. national interest"); *Haiti Termination*, 90 Fed. Reg. at 28, 763  (explaining that "widespread gang violence" in Haiti has "direct consequences on U.S. public safety."). Additionally, Plaintiffs' attempt to rely on statements by President Trump and other "prominent officials," should be rejected here for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements—remote in time and made in unrelated contexts— do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (citing *Arlington Heights,* 429 U.S. at  268).

The Court should reject Plaintiffs' far-fetched attempt to locate discriminatory or ethnic animus in a collection of statements that say nothing about race or ethnicity. To the contrary, the statements that appear in the First Amended Complaint—and Plaintiffs' motion for summary judgment—simply reflect the current administration's goal of reducing illegal immigration and crime. Plaintiffs' untenable position would mean that these statements vitiate every ensuing immigration policy of this administration based on equal protection grounds. However, this reasoning should not be entertained, and Plaintiffs' equal protection claims must be dismissed.

## IV.    The Declaratory Judgment Act Does Not Provide Plaintiffs a Basis for Relief

Because Plaintiffs have not plausibly alleged a cognizable claim, they are not entitled to any remedy, and the Court should dismiss the Declaratory Judgment Act claim along with Plaintiffs' substantive claims. *See Daylily Farms, Inc. v. Chao*, 357 F. Supp. 2d 356, 359 (D. Mass. 2005).

## CONCLUSION

For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). Alternatively, Plaintiffs' Motion for Partial Summary Judgment should be denied and judgment entered in favor of Defendants.

Dated: November 24, 2025

Respectfully submitted,
BRETT SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Deputy Assistant Attorney General

WILLIAM H. WEILAND
Acting Assistant Director

DANIEL CAPPELLETTI
LAUREN BRYANT
SHELBY WADE
ERIC SNYDERMAN
JEFFREY HARTMAN
ILANA KRAMER
LORI MACKENZIE
Trial Attorneys

/s/ *Catherine A. Ross*
CATHERINE A. ROSS
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7082
Catherine.ross@usdoj.gov

*Attorneys for the Defendants*

16

**CERTIFICATE OF SERVICE**

I, Catherine A. Ross, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  November 24, 2025                    By:*/s/ Catherine A. Ross*

Catherine A. Ross

Trial Attorney

17